*1222 Opinion
LIU, J.
Petitioner Kewhan Robey was arrested and charged with possession of marijuana for sale and with the sale or transportation of marijuana after police seized a package from a private shipping company and discovered the drug inside. The superior court denied petitioner’s motion to suppress evidence, relying on exigent circumstances and inevitable discovery. The Court of Appeal granted Robey’s petition for writ of mandate and ordered the superior court to grant the motion to suppress. The Office of the Santa Barbara County District Attorney (District Attorney), as real party in interest, sought this court’s review on two issues: (1) whether a police officer may conduct a warrantless search of a package seized from a common carrier based on the exigent circumstance of the container’s mobility, and (2) whether a police officer can conduct a warrantless search based on the “plain smell” of contraband.
On the first issue, we hold that although a container’s mobility may constitute exigent circumstances sufficient to justify a warrantless seizure, it cannot alone justify a search of the container once it has been seized. On the second issue, we find that the District Attorney forfeited the plain smell argument by failing to raise it in opposition to petitioner’s motion to suppress in the superior court. Because the District Attorney presents no other grounds to justify the search of the container, petitioner’s motion to suppress should be granted as to the evidence obtained as a result of the warrantless search.
I.
On July 23, 2010, FedEx employee Nancy Her contacted the Santa Maria Police Department to report that a package smelling of marijuana had been dropped off for shipment to an Illinois address. Officer Nathan Totorica responded. As he entered the store and walked toward the package, Officer Totorica smelled the odor of marijuana, which got stronger as he approached the package. Nancy Her informed Officer Totorica that FedEx could not deliver the package and asked what she should do with it.
Officer Totorica seized the unopened and sealed box as evidence and took it to the police station. At the station, he contacted his supervisor, Lieutenant Jerel Haley, who also concluded that the box smelled of marijuana. The officers conferred with the narcotics unit and then opened the box. Inside they found 444 grams of marijuana. The officers did not seek a warrant for either the seizure or subsequent search of the container.
Three days later, petitioner Robey arrived at the same FedEx location to inquire about an undelivered package. Her recognized petitioner as the man *1223 who had delivered the box seized by the police, and she telephoned Officer Totorica. Officer Totorica returned to the store and arrested petitioner, who was carrying a packing slip for the seized package.
Petitioner was charged with possession of marijuana for sale and with the sale or transportation of marijuana. (Health & Saf. Code, §§ 11359, 11360, subd. (a).) The superior court denied petitioner’s motion to suppress evidence, finding that exigent circumstances justified the seizure and that the subsequent search was valid under the inevitable discovery doctrine, presumably because the police had sufficient probable cause to obtain a warrant had one been sought.
Petitioner then sought a writ of mandate in the Court of Appeal, which in turn issued an order to show cause. The Court of Appeal, on its own initiative, asked the parties to provide an informal response to several questions, including whether the plain smell of marijuana, by itself, would have allowed the search and seizure of the package without a warrant. After briefing and argument by the parties, the Court of Appeal granted the petition and ordered that a peremptory writ of mandate issue directing the trial court to grant petitioner’s motion to suppress evidence. Without deciding whether the officer was entitled to seize the package, the Court of Appeal held (1) that exigent circumstances did not justify the subsequent search of the container, (2) that the odor of contraband alone cannot justify a warrantless search, (3) that the inevitable discovery doctrine did not apply to the facts here, and (4) that petitioner had not abandoned the package and therefore had “standing” to seek suppression of the evidence.
The District Attorney sought review in this court on two issues; whether the mobility of the package constituted an exigent circumstance permitting the officers to conduct a warrantless search after the package was already seized, and whether the plain smell of marijuana constitutes an exception to the warrant requirement. We granted review.
H.
“Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.” (People v. Lenart (2004) 32 Cal.4th 1107, 1118 [12 Cal.Rptr.3d 592, 88 P.3d 498]; see Cal. Const., art. I, § 28, subd. (f)(2).) “In reviewing a trial court’s ruling on a motion to suppress evidence, we defer to that court’s factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.” (Lenart, at p. 1119.)
*1224 “The touchstone of Fourth Amendment analysis is whether a person has a ‘constitutionally protected reasonable expectation of privacy.’ ” (California v. Ciraolo (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 106 S.Ct. 1809], quoting Katz v. United States (1967) 389 U.S. 347, 360 [19 L.Ed.2d 576, 88 S.Ct. 507] (conc. opn. of Harlan, J.).) “What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.” (Katz, at pp. 351-352 (maj. opn.).) “The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that ‘searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.’ [(Katz, at p. 357).]” (Mincey v. Arizona (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 98 S.Ct. 2408].) It is well established that the Fourth Amendment’s protection extends to letters and other sealed packages in shipment. (See, e.g., United States v. Jacobsen (1984) 466 U.S. 109, 114 [80 L.Ed.2d 85, 104 S.Ct. 1652] (Jacobsen); United States v. Van Leeuwen (1970) 397 U.S. 249, 251-252 [25 L.Ed.2d 282, 90 S.Ct. 1029]; Ex parte Jackson (1877) 96 U.S. 727, 733 [24 L.Ed. 877].)
As an initial matter, the District Attorney says petitioner abandoned his interest in the package by using a false name and address when he shipped it. But this argument is unavailing because the District Attorney, at the suppression hearing, accepted petitioner’s offer of proof to establish a privacy interest in the container, a concession inconsistent with the District Attorney’s later claim of abandonment. In addition, the District Attorney did not enter the packing slip into evidence or create any other record of a false name or address to support a claim of abandonment in response to defense counsel’s claim that petitioner showed he continued to have an interest in the package by checking on its delivery after leaving it for shipment. (See People v. Pereira (2007) 150 Cal.App.4th 1106, 1113-1114 [58 Cal.Rptr.3d 847] [upholding trial court’s finding that defendant did not abandon package despite using false name and return address because other evidence showed defendant “ ‘really care[d] about it getting delivered’ ”].)
As to the first issue on which we granted review, the District Attorney contends that petitioner’s motion to suppress should be denied because the warrantless seizure and subsequent search of the container in this case were justified by exigent circumstances arising from the container’s mobility. Here petitioner contests only the search, not the seizure, of the container. As explained below, we conclude that although the mobility of a package in shipment may constitute an exigent circumstance permitting officers to seize it without a warrant, such mobility cannot alone justify a warrantless search of the package after it has been seized.
*1225 A.
The District Attorney argues that “[o]nce the package was seized, law enforcement had the right to open the package based on the exigent circumstances that existed at the time of the seizure.” For this proposition, the District Attorney relies principally on People v. McKinnon (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097] (McKinnon). The defendant in McKinnon brought five cartons to an airline freight counter for shipment, describing their contents as “personal effects.” After the defendant left, an airline employee suspected that the cartons contained contraband and, upon opening one of the cartons, found several brick-shaped packages inside. The employee, believing he had discovered marijuana in one of the packages, telephoned the police. When the officer arrived, the carton remained open, and the officer could see the same brick-shaped packages. The officer “formed the opinion that the substance in the packages was marijuana. He proceeded to open one of the packages, and verified its contents.” (Id. at p. 903.)
This court, by a four-to-three majority, upheld the warrantless search and, in so doing, overruled a pair of four-to-three decisions issued three years earlier holding that when containers consigned for shipment are safely in the carrier’s custody, there is no exigent circumstance justifying a warrantless search. (McKinnon, supra, 1 Cal.3d at p. 910, overruling People v. McGrew (1969) 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1] (McGrew) & Abt v. Superior Court (1969) 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10] (Abt).) The basis for the overruling, McKinnon said, was that the intervening high court decision in Chambers v. Maroney (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975] (Chambers) “undermine[d] the foundation of the majority opinions in McGrew and Abt.” (McKinnon, at p. 910.)
In Chambers, the high court held that where police have probable cause to stop and search a car without a warrant, a subsequent search of the car after it has been driven to a police station is also permissible without a warrant. (Chambers, supra, 399 U.S. at pp. 51-52.) Chambers observed that the high court had long adhered to the rule that a warrantless search of an automobile is permissible so long as the police have probable cause to believe the car contains evidence or contraband. (Id. at p. 48, citing Carroll v. United States (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280] (Carroll).) This exception to the warrant requirement, Chambers said, is justified by the ease with which an automobile might be moved out of the jurisdiction before a warrant can be obtained. (Chambers, at pp. 48, 51.) Although Chambers recognized that the problem of mobility might be solved by first seizing the car and then seeking a search warrant, the high court declined to adopt such a rule: “For constitutional purposes, we see no difference between on the one hand seizing *1226 and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. [][]... The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car’s immobilization until a warrant is obtained.” (Id. at p. 52.)
The court in McKinnon said “the rationale of Chambers” is not “limited to searches of automobiles and similar self-propelled ‘vehicles’ such as trucks, trains, boats, or airplanes.” (McKinnon, supra, 7 Cal.3d at p. 908.) McKinnon stated: “[WJhenever [a container] is consigned to a common carrier, there can be no doubt that it is intended, in fact, to be moved.” (Id. at p. 909.) Because “all goods or chattels consigned to a common carrier for shipment” are “no less movable than an automobile,” the court said, “the reasons for the rule permitting a warrantless search of a vehicle upon probable cause are equally applicable to the search of such a chattel.” (Ibid.) The court assigned “no constitutional relevance” to the fact that the cartons were already in the carrier’s safe custody: “In Chambers the defendants’ automobile was seized by police officers and impounded at the police station; if the high court can say, as it does, that under those circumstances ‘the mobility of the car’ still obtained at the station house [citation], a fortiori a chattel such as here involved remains ‘mobile’ in the constitutional sense despite its limited and voluntary bailment to a common carrier.” (McKinnon, at p. 910.) McKinnon thus held that “when the police have probable cause to believe a chattel consigned to a common carrier contains contraband, they must be entitled either (1) to search it without a warrant or (2) to ‘seize’ and hold it until they can obtain a warrant; absent these remedies, the chattel will be shipped out of the jurisdiction or claimed by its owner or by the consignee.” (Id. at p. 909.)
Three justices dissented in an opinion by Justice Peters. While acknowledging that the court was “bound” by Chambers, Justice Peters said “Chambers, however, does not purport to apply to everything that is not nailed down or affixed to realty. The Supreme Court’s opinion is closely tied to a long series of cases involving one and only one form of movable object—that which is used as a vehicle to transport goods from one place to another.” (McKinnon, supra, 7 Cal.3d at p. 920 (dis. opn. of Peters, J.).) Responding to the court’s assertion that a container consigned for shipment “remains ‘mobile’ in the constitutional sense despite its limited and voluntary bailment to a common carrier” (id. at p. 910), Justice Peters said: “Indeed, chattels will retain their movable character anywhere, whether within a depot, dwelling house, or concrete vault as well as an airport, unless they are affixed to realty or otherwise rendered nonmovable. The point is not that the chattels here *1227 involved were within the custody of the airlines, but that they were not in a vehicle capable of moving them beyond the jurisdiction on its own power; i.e., they had not entered the course of transportation. Drawing a line at goods physically aboard a carrier at least has the virtue of certainty. This is the line drawn by the United States Supreme Court in case after case. If all things movable could be searched without a warrant if there were probable cause to believe they contained evidence or contraband, the Fourth Amendment would be rendered nugatory, and in effect the search without a warrant would become the rule rather than the exception.” (Id. at p. 923 (dis. opn. of Peters, J.).)
The central premise of McKinnon—the reason it gave for overruling McGrew and Abt—is that the high court’s decision in Chambers, though involving an automobile search, stands for the broader principle that not only cars but also “ ‘other things readily moved’ ” are subject to warrantless search upon probable cause. (McKinnon, supra, 7 Cal.3d at p. 909, italics omitted.) Indeed, the McKinnon court appeared to treat automobiles as simply one kind of movable container: “To be sure, [a box consigned for shipment] has neither wheels nor motive power; but these features of an automobile are legally relevant only insofar as they make it movable despite its dimensions. A box, which is a fraction of the size and weight of an automobile, is movable without such appurtenances.” (Id. at p. 909.) According to McKinnon, a package consigned for shipment falls under the same rule as an automobile: its mobility renders it subject to a warrantless search either on the spot or at the station house.
However, during the more than four decades since Chambers was decided, the high court has never extended the rationale of that decision in the manner that McKinnon did. To the contrary, as we explain below, subsequent cases treat Chambers as part of the line of authority specifically addressing automobile searches, and the high court has repeatedly held that a movable container suspected to hold evidence or contraband is subject to a warrantless search if the container is located inside an automobile. Outside the context of an automobile search, the high court has not applied the rationale of Chambers, Carroll, or any other authority to hold that the mobility of a container by itself constitutes an exigent circumstance justifying a warrantless search. Instead, the settled rule is that “[e]ven when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.” (Jacobsen, supra, 466 U.S. at p. 114.) The development of the law since McKinnon undermines its reliance on Chambers as a basis for extending the well-delineated automobile exception to “all goods or chattels consigned to a common carrier for shipment.” (McKinnon, supra, 7 Cal.3d at p. 909.)
*1228 B.
Seven years after Chambers, the high court decided United States v. Chadwick (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] (Chadwick), which considered the warrantless search of a container seized from an automobile. In Chadwick, federal agents learned of two passengers transporting a suspicious footlocker by rail and met the train at its destination along with a police dog trained to detect marijuana. Without alerting the suspects, the dog signaled the presence of drugs in the footlocker. The officers continued to observe the suspects as they loaded the footlocker into the trunk of a waiting automobile. At that point, before the car engine was started, the officers arrested the men and seized the footlocker, transporting it to the station house. There the officers opened the locked footlocker without a warrant and discovered marijuana inside. (See id. at pp. 3-5.)
Although the footlocker was seized from an automobile, the high court held that the automobile exception did not apply. (Chadwick, supra, 433 U.S. at pp. 11-13.) The court explained that the “footlocker’s mobility [does not] justify dispensing with the added protections of the Warrant Clause. Once the federal agents had seized it at the railroad station and had safely transferred it to the Boston Federal Building under their exclusive control, there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained. The initial seizure and detention of the footlocker, the validity of which respondents do not contest, were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant.” (Id. at p. 13, fn. omitted.)
Relying on “the rationale of [the high court’s] automobile search cases,” the government argued that “luggage [is] analogous to motor vehicles for Fourth Amendment purposes.” (Chadwick, supra, 433 U.S. at pp. 11-12.) The high court acknowledged the automobile search cases, including Chambers, but then rejected the analogy on several grounds. Whereas a footlocker may be “safely immobilized” upon seizure, “[t]his may often not be the case when automobiles are seized. Absolutely secure storage facilities may not be available, [citations], and the size and inherent mobility of a vehicle make it susceptible to theft or intrusion by vandals.” (Id. at p. 13 & fn. 7.) Moreover, even where “ ‘the possibilities of the vehicle’s being removed or evidence in it destroyed [are] remote, if not nonexistent,’ ” a warrantless search is justified by “the diminished expectation of privacy which surrounds the automobile.” (Id. at p. 12.) A person has a diminished expectation of privacy in an automobile because “ ‘its function is transportation[,] ... it seldom serves as one’s residence or as the repository of personal effects[,] [i]t travels *1229 public thoroughfares where both its occupants and its contents are in plain view’ ” (id. at p. 12), and both vehicles and drivers are subject to extensive regulation by states and localities (id. at p. 13). By contrast, “a person’s expectations of privacy in personal luggage are substantially greater than in an automobile.” (Id. at p. 13.) Finally, “[i]t was the greatly reduced expectation of privacy in the automobile, coupled with the transportation function of the vehicle, which made the Court in Chambers unwilling to decide whether an immediate search of an automobile, or its seizure and indefinite immobilization, constituted a greater interference with the rights of the owner. This is clearly not the case with locked luggage.” (Id. at pp. 13-14, fn. 8; see ibid. [“[a] search of the interior was ... a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker” even though the impoundment infringed on the owners’ use and possession].)
Two years later, the high court in Arkansas v. Sanders (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586] (Sanders) applied the rule in Chadwick to a suitcase found in “an automobile lawfully stopped and searched on the street.” (Sanders, at p. 762.) As in Chadwick, the police in Sanders had information that the respondent was carrying drugs in his luggage. The police met him at the airport and observed as he placed his luggage in the trunk of a taxi and departed the airport. The police followed, stopping the taxi several blocks later. An officer opened the trunk and unlocked the suitcase without a warrant to discover marijuana inside. (See id. at p. 755.)
After citing its automobile search cases, including Chambers, and affirming the distinctions drawn in Chadwick between luggage and automobiles, the high court in Sanders said: “A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in Chadwick, the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. [Citation.] Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.” (Sanders, supra, 442 U.S. at pp. 763-764, fns. omitted.) Thus Sanders, like Chadwick, recognized a general rule that movable containers, once lawfully seized, may not be searched without a warrant and declined to carve out an exception for luggage seized from an automobile. (See Sanders, at p. 766 [“In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway.”].)
*1230 The high court in Sanders rejected the state’s argument that under Chambers, “if the police were entitled to seize the suitcase, then they were entitled to search it.” (Sanders, supra, 442 U.S. at p. 765, fn. 14.) The court saw “the seizure of a suitcase as quite different from the seizure of an automobile. In Chambers, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments. [Citation.] No comparable burdens are likely to exist with respect to the seizure of personal luggage.” (Id. at pp. 765-766, fn. 14.)
Three years after Sanders, the high court in United States v. Ross (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157] (Ross) held that where police have probable cause to search an automobile without a warrant, the search may encompass not only a closed compartment such as a glove box, but also any containers or packages found inside the vehicle. Applying the principle that “[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause,” Ross explained that “[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.” (Id. at pp. 823-824.) “If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.” (Id. at p. 825.)
The high court in Ross had occasion to review its automobile search cases, and it clarified that the justification for searching an automobile without a warrant is not strictly based on exigency: “although a failure to seize a moving automobile believed to contain contraband might deprive officers of the illicit goods, once a vehicle itself has been stopped the exigency does not necessarily justify a warrantless search (Ross, supra, 456 U.S. at p. 807, fn. 9, citing Chambers, supra, 399 U.S. at pp. 62-64 (conc. & dis. opn. of Harlan, J.).) With regard to Chambers's holding that a vehicle may be searched without a warrant after it has been impounded if it could have been searched on the spot, Ross explained that the rule is “based on the practicalities of the situations presented and a realistic appraisal of the relatively minor protection that a contrary rule would provide for privacy interests. Given the *1231 scope of the initial intrusion caused by a seizure of an automobile—which often could leave the occupants stranded on the highway—the Court [in Chambers] rejected an inflexible rule that would force police officers in every case either to post guard at the vehicle while a warrant is obtained or to tow the vehicle itself to the station. Similarly, if an immediate search on the scene could be conducted, but not one at the station if the vehicle is impounded, police often simply would search the vehicle on the street—at no advantage to the occupants, yet possibly at certain cost to the police.” (Ross, at p. 807, fn. 9.)
Further, the high court in Ross distinguished Chadwick and Sanders. Whereas Ross involved the search of a container found inside a car where “police officers had probable cause to search respondent’s entire vehicle” (Ross, supra, 456 U.S. at p. 817), Chadwick and Sanders were cases where police had probable cause to believe only that the luggage—and not “the vehicle or anything [else] within it”—contained contraband. (Ross, at p. 814; see id. at p. 824 [“Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.”].) In concluding that “an individual’s expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband” (id. at p. 823, italics added), Ross “rejected some of the reasoning in Sanders” broadly suggesting that “a warrantless search of a container found in an automobile could never be sustained as part of a warrantless search of the automobile itself’ (Ross, at pp. 824, 814). Ross also said, in tension with Chadwick's statement concerning diminished privacy expectations in cars, that “[c]ertainly the privacy interests in a car’s trunk or glove compartment may be no less than those in a movable container” yet “[t]hese interests must yield to the authority of a search . . . .” (Ross, at p. 823.) But the high court continued to adhere to the holdings in Sanders and Chadwick because those cases, unlike Ross, involved probable cause to search only a container and not the car where the container was found. (Ross, at pp. 809-814, 824.)
Finally, California v. Acevedo (1991) 500 U.S. 565 [114 L.Ed.2d 619, 111 S.Ct. 1982] (Acevedo) dispensed with the “dichotomy between the rule in Chadwick and the rule in Ross,” which “dictate[d] that if there is probable cause to search a car, then the entire car—including any closed container found therein—may be searched without a warrant, but if there is probable cause only as to a container in the car, the container may be held but not searched until a warrant is obtained.” (Acevedo, at p. 568.) Explaining that “Sanders was explicitly undermined in Ross . . .” and that “the dual regimes for automobile searches that uncover containers has proved . . . confusing . . .” for courts and police officers, the high court concluded that “it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant requirement for closed containers set forth in Sanders.” (Id. at *1232 p. 579.) Acevedo held: “The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.” (Id. at p. 580.) The high court thus extended the rule in Ross for searching a container found in the course of a lawful automobile search “to all searches of containers found in an automobile,” including a search supported only by probable cause that the container, and not the car, holds evidence or contraband. (Id. at p. 579.) In so holding, Acevedo overruled Chadwick and Sanders on that point. (Id. at pp. 576-579.)
C.
The case law on automobile searches, from Carroll to Chambers to Acevedo, reveals that the rationale for allowing a vehicle to be searched without a warrant is rooted in practical concerns unique to automobiles. Further, the rationale for allowing any containers located in a vehicle to be searched without a warrant is also specific to the automobile context. As we now explain, these rationales are distinct, and neither supports the analogy drawn in McKinnon between automobiles and packages consigned for shipment.
1.
As noted, McKinnon said that because “all goods or chattels consigned to a common carrier for shipment... are no less movable than an automobile, the reasons for the rule permitting a warrantless search of a vehicle upon probable cause are equally applicable to the search of such a chattel.” (McKinnon, supra, 7 Cal.3d at p. 909.) In concluding that “a chattel . . . remains ‘mobile’ in the constitutional sense despite its limited and voluntary bailment to a common carrier,” McKinnon relied on Chambers’’& statement that the mobility of a car “still obtain[s]” after it has been seized. (McKinnon, at p. 910, citing Chambers, supra, 399 U.S. at p. 52.) In Ross, however, the high court acknowledged that this statement in Chambers was something of a legal fiction. Although exigent circumstances may justify seizing a moving automobile without a warrant, Ross explained, “once a vehicle itself has been stopped the exigency does not necessarily justify a warrantless search.” (Ross, supra, 456 U.S. at p. 807, fn. 9, citing Chambers, at pp. 62-64 (conc. & dis. opn. of Harlan, J.).) Ross clarified that the reason for permitting a warrantless search of a lawfully stopped vehicle is not that the vehicle retains its mobility, but that the “practicalities” of “forcing] police officers in every case either to post guard at the vehicle while a warrant is obtained or to tow the vehicle itself to the station”—“which often could leave the occupants stranded on the highway”—are too burdensome to justify a rule allowing police, upon probable cause, only to seize but not to search a vehicle without a warrant. (Ross, at p. 807, fn. 9.)
*1233 Ross echoed Sanders’s concern that such a rule would require “police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments.” (Sanders, supra, 442 U.S. at pp. 765-766, fn. 14; see Chadwick, supra, 433 U.S. at p. 13, fn. 7 [noting difficulty of providing “[absolutely secure storage facilities” for automobiles].) Sanders observed that these practical concerns limit the rationale of Chambers to automobiles (Sanders, at p. 765, fn. 14), and it is notable that after Sanders and Ross, the high court in Acevedo did not explain the holding in Chambers on the basis of a vehicle’s continuing mobility after it has been seized. (See Acevedo, supra, 500 U.S. at pp. 569-570.) Instead, Acevedo explained that the later warrantless search at the police station in Chambers “derived from” the authority to conduct “an immediate search without a warrant at the moment of seizure” (Acevedo, at p. 570)—authority that stems from the practical difficulties of transporting and securely storing an automobile pending issuance of a search warrant. (See ibid. [describing Chambers as having “reasoned . . . that the police could search later whenever they could have searched earlier, had they so chosen”].)
The high court’s refinement of the rationale for Chambers’s holding undermines McKinnon’s purported analogy between automobiles and containers consigned for shipment. The analogy rests on McKinnon’s observation that such containers “are no less movable than an automobile.” (McKinnon, supra, 7 Cal.3d at p. 909.) But it is clear from Sanders and Ross that the justification for a warrantless search of an automobile after it has been lawfully stopped turns not on its continuing mobility but instead on the practical difficulties of towing, storing, and securing a car, and providing for the safety of its stranded occupants, pending the issuance of a search warrant. Such difficulties do not generally apply to packages consigned for shipment, and there is no evidence in the record before us that the police had any difficulty in bringing the FedEx package to the police station and securely storing it there pending issuance of a search warrant.
In sum, absent unusual circumstances where transporting or storing a container poses practical difficulties for law enforcement, the concerns justifying an immediate warrantless search of a lawfully stopped automobile do not apply to packages consigned for shipment. In this case, there is no dispute as to whether the police lawfully seized the package without a warrant. Because there was no justification for an immediate search of the package *1234 once it was seized, the police had no derivative authority to search the package later at the police station without a warrant.
2.
Nor do the container searches upheld in Ross and Acevedo lend credence to McKinnon’s theory that the mobility of packages consigned for shipment provides a basis for a warrantless search. Neither Ross nor Acevedo relied on the mobility of a container found in an automobile as the ground for upholding a warrantless search.
In Ross, the high court held that when police have probable cause to believe a vehicle is carrying evidence or contraband, the scope of a search may extend to “every part of the vehicle that might contain the object of the search,” including the glove compartment, the trunk, and even the upholstery. (Ross, supra, 456 U.S. at p. 821; see id. at pp. 804-805 [Carroll upheld a search where police tore open a car’s upholstery to find contraband.].) Ross saw no distinction between the closed compartments of a car and a closed container found in a car in terms of their utility for stowing contraband or the privacy interests affected. (Ross, at pp. 820-821, 823.) If a car’s closed compartments may be opened without a warrant during a lawful vehicle search, the high court reasoned, then closed containers found during a lawful vehicle search may be opened as well. (Id. at p. 824 [scope of automobile search “is not defined by the nature of the container in which the contraband is secreted” but “by the object of the search and the places in which there is probable cause to believe that it may be found”].)
In reaching this holding, Ross nowhere suggested that seizing or storing a container posed any of the practical difficulties associated with towing and impounding an automobile pending issuance of a search warrant. But Ross did rely on practical concerns unique to containers found in the course of a lawful automobile search. In rejecting a rule that would allow police to search the entire vehicle but require any containers found to be taken to a magistrate, Ross observed that “prohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained.” (Ross, supra, 456 U.S. at p. 821, fn. 28.) It is thus apparent that Ross’s reasoning applies specifically to containers found during an automobile search and not to movable containers generally.
*1235 The same is true of Acevedo. In allowing police to open a container in a car where probable cause extends only to the container and not the car, Acevedo, like Ross, did not rely on the mobility of such containers or on any suggestion that containers pose the kind of practical problems associated with seizing and storing an automobile pending a search warrant. Instead, the high court explained that having held in Ross that police may open a container found in the course of a general vehicle search, it could see “no principled distinction” between such a container and “a container found in a car after a limited search for the container.” (Acevedo, supra, 500 U.S. at p. 574; see ibid. [both types of containers “are equally easy for the police to store and for the suspect to hide or destroy”].) As in Ross, the high court in Acevedo said that prohibiting police from opening a container found in a car may “disserve privacy interests.” (Acevedo, at p. 574.) “At the moment when officers stop an automobile, it may be less than clear whether they suspect with a high degree of certainty that the vehicle contains drugs in a bag or simply contains drugs. If the police know that they may open a bag only if they are actually searching the entire car, they may search more extensively than they otherwise would in order to establish the general probable cause required by Ross. [][] . . . We cannot see the benefit of a rule that requires law enforcement officers to conduct a more intrusive search in order to justify a less intrusive one.” (Id. at pp. 574-575.)
With this passage and others, Acevedo made clear that its rationale and holding pertained specifically to containers in the context of automobile searches. In rejecting the relevance of cases concerning other container searches, Acevedo said: “From Carroll through Ross, this Court has explained that automobile searches differ from other searches.” (Acevedo, supra, 500 U.S. at p. 578.) Further, the court said: “Our holding today neither extends the Carroll doctrine nor broadens the scope of the permissible automobile search delineated in Carroll, Chambers, and Ross. It remains a ‘cardinal principle that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.” ’ [Citation.] We held in Ross: ‘The exception recognized in Carroll is unquestionably one that is “specifically established and well delineated.” ’ [Citation.]” (Acevedo, at p. 580.) And perhaps most pointedly, Acevedo explained its holding as follows: “Until today, this Court has drawn a curious line between the search of an automobile that coincidentally turns up a container and the search of a container that coincidentally turns up in an automobile. The protections of the Fourth Amendment must not turn on such coincidences. We therefore interpret Carroll as providing one rule to govern all automobile searches.” (Ibid., italics added.)
Thus, in overruling Chadwick and Sanders, Acevedo rejected the view that containers found in cars are subject to the same Fourth Amendment rules *1236 that apply to container searches generally. However, in bringing all containers found in cars within the ambit of the automobile exception, Acevedo expressly limited its holding to automobile searches and did not disturb the general rule that a warrant is required to search a lawfully seized container. Nothing in the automobile-specific reasoning of Ross and Acevedo invites an extension of those holdings to permit the warrantless search of a sealed package consigned for shipment.
D.
In the midst of developing its jurisprudence on container searches in the context of automobiles, the high court had occasion to consider the applicability of the Fourth Amendment to containers outside of the automobile context. (See Jacobsen, supra, 466 U.S. 109; United States v. Place (1983) 462 U.S. 696 [77 L.Ed.2d 110, 103 S.Ct. 2637] (Place).) These cases confirm that a warrant is required to search a package consigned for shipment once it has been lawfully seized.
In Place, federal agents met a suspicious airline passenger at his destination and asked to search his luggage. (Place, supra, 462 U.S. at p. 698.) When the passenger refused, the agents seized his bags and transported them to another location for a “sniff test” by a narcotics detection dog. Ninety minutes later, the test was performed, and the dog alerted to one of the bags, whereupon the agents obtained a search warrant, opened the bag, and discovered cocaine. (Id. at p. 699.) The high court held that the officer’s reasonable suspicion justified an investigative detention of the luggage and that the canine sniff did not constitute a search under the Fourth Amendment. (462 U.S. at pp. 706-707.) But the court also held that the 90-minute detention of the suspect’s luggage in order to conduct the sniff test exceeded the permissible scope of the investigative detention. (Id. at pp. 709-710.)
In setting forth the applicable principles, Place said: “Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.” (Place, supra, 462 U.S. at p. 701, italics added.) In other words, exigent circumstances can justify the seizure of a container without a warrant, but the container, once seized, cannot be searched without “issuance of a warrant to examine its contents.” (Ibid.) In support of this general rule, Place cited Sanders and Chadwick. As noted, Acevedo overruled Sanders and Chadwick insofar as they applied the warrant requirement to containers found in cars. But Acevedo, in exempting containers found in cars, *1237 did not call into question the general rule for container searches that was stated by Place and recognized by Sanders and Chadwick. (See ante, at pp. 1235-1236.) Indeed, even as it overruled Sanders and Chadwick with respect to container searches in the automobile context, Acevedo distinguished Place on the ground that Place “did not involve an automobile at all.” (Acevedo, supra, 500 U.S. at p. 577; see id. at p. 578 [“Place had nothing to do with the automobile exception and is inapposite.”].) The general rule stated by Place thus remains good law.
One year after Place, the high court decided Jacobsen, supra, 466 U.S. 109. In that case, FedEx employees opened a package that had been damaged by a forklift. Upon discovering plastic bags with white powder packed inside a tube with crumpled newspaper, the employees notified law enforcement. When a federal agent arrived, he found the package with the top open and one end of the tube slit open. He removed the plastic bags from the tube and saw the white powder. He then opened the bags and conducted a field test that identified the powder as cocaine. (See id. at pp. 111-112.)
The high court held that the initial opening of the package by the FedEx employees “did not violate the Fourth Amendment because of their private character.” (Jacobsen, supra, 466 U.S. at p. 115.) The court then held that because the private search had eliminated any privacy interest in the contents of the package, the agent’s handling of the package and its contents was lawful insofar as it did not exceed the scope of the private search. (Id. at p. 119 [agent’s “manual inspection of the tube and its contents” did “not tell him anything more than he already had been told” by the FedEx employees]; id. at p. 121 [seizure was reasonable because “respondents’ privacy interest in the contents of the package had been largely compromised . . .”].) Finally, the court held that “[a] chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy.” (Id. at p. 123.)
Jacobsen prefaced its analysis with the following precepts: “When the wrapped parcel involved in this case was delivered to the private freight carrier, it was unquestionably an ‘effect’ within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. Such a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered.” (Jacobsen, supra, 466 U.S. at p. 114, italics added & ftis. omitted.) In support *1238 of the italicized rule, the high court cited Place as well as Ross, Sanders, and Chadwick. (Jacobsen, at p. 114, fn. 8.) Jacobsen's affirmation of the general rule casts further doubt on McKinnon because if the mobility of a container consigned for shipment were enough to justify a warrantless search, as McKinnon held, then Jacobsen's entire analysis upholding the agent’s inspection of the package and its contents would have been unnecessary.
Since Jacobsen, the issue of whether a package consigned for shipment may be searched without a warrant appears to have arisen infrequently, and the few reported cases on point have concluded that a warrant is required. In Daniels v. Cochran (Fla.Dist.Ct.App. 1995) 654 So.2d 609 (Daniels), a police officer opened a package to which a drug-sniffing dog alerted during “routine package checks on a conveyor belt at a Federal Express office.” (Id. at p. 611.) The court held that “[wjhile [the officer] may have been entitled to seize the package based on the dog’s alert without a warrant, his opening of the package without a warrant violated the Fourth Amendment . . . .” (Id. at p. 613.) Distinguishing Acevedo's exception for warrantless searches of automobiles and their contents, the court said that “a canine sniff which alerts to a package does not eliminate the requirement that, absent exigent circumstances, consent or other recognized exceptions, a search warrant must be obtained before a search of the contents of the package passes constitutional muster. See [Place, supra, 462 U.S. at pp. 706-707].” (Daniels, at p. 613.)
In Seeley v. State (Ala.Crim.App. 1995) 669 So.2d 209 (Seeley), a FedEx employee, Kaufmann, opened an undeliverable box and found a tubular package inside. He did not open the tube but squeezed it, felt a powdery substance he suspected to be drugs, and called the police. An officer, Ware, arrived with a drug-sniffing dog that alerted to the tube. The officer then took the tube to his office. There, he opened it and performed a test on the powder that indicated the presence of cocaine. (Id. at p. 211.) The court invalidated the search: “Under Jacobsen, Ware exceeded the scope of Kaufmann’s search when he cut open the tube in the appellant’s package without a search warrant. Jacobsen establishes that a legitimate expectation of privacy exists in sealed packages sent by common carrier and that a warrantless government search cannot exceed what was carried out by private parties. Ware should have obtained a search warrant before cutting open the tubular package that contained cocaine. Ware had probable cause to obtain a search warrant based on his observations and the results of the ‘sniff test’ by the narcotics detection dog. Because Ware had dominion and control over the package, there was little chance of loss or destruction of the package. There were no exigent circumstances that justified opening the package before obtaining a search warrant.” (Id. at pp. 213-214.)
In contrast to the warrantless searches held unlawful in Daniels and Seeley, the conduct of law enforcement in many other cases suggests that it is *1239 common practice, consistent with Place and Jacobsen, to obtain a warrant before searching a container consigned for shipment. (See, e.g., U.S. v. Robinson (6th Cir. 2004) 390 F.3d 853, 858-859 [police obtained a warrant to open a package in shipment that smelled of marijuana]; U.S. v. Logan (8th Cir. 2004) 362 F.3d 530, 531-532 [police obtained a warrant to open a package at a mailbox facility after narcotics dog alerted to the package]; U.S. v. Morones (8th Cir. 2004) 355 F.3d 1108, 1109 [police obtained a warrant to search a package detained at a FedEx facility]; U.S. v. Smith (7th Cir. 1994) 34 F.3d 514, 516 [police obtained a warrant to search a FedEx package after a canine alert]; U.S. v. Hall (10th Cir. 1994) 20 F.3d 1084, 1085 [same].)
The District Attorney asserts, without citation to any authority, that McKinnon “is still good law and has been followed by numerous courts.” In fact, there appear to be only two California cases that have applied McKinnon to uphold the warrantless search of a container based on its mobility, and both predate the development of the law in Chadwick, Sanders, Place, and Jacobsen. (See People v. Goodyear (1975) 54 Cal.App.3d 157, 162 [126 Cal.Rptr. 368]; People v. Superior Court (Reilly) (1975) 53 Cal.App.3d 40, 51-52 [125 Cal.Rptr. 504].) To buttress McKinnon, the District Attorney relies on U.S. v. Johnston (9th Cir. 1974) 497 F.2d 397, which upheld the warrantless search of two suitcases on a departing train. But U.S. v. Johnston also predates the line of cases from Chadwick to Jacobsen. The District Attorney also relies on United States v. Johns (1985) 469 U.S. 478 [83 L.Ed.2d 890, 105 S.Ct. 881] (Johns), which applied Ross to uphold the delayed search of packages found in two lawfully seized pickup trucks. But because Johns is an automobile search case, it lends no support to McKinnon's holding for reasons already discussed.
McKinnon's rule that the mobility of a container is itself sufficient to justify a warrantless search has not been followed by any appellate court in California for almost four decades. This is unsurprising in light of subsequent developments that have undermined McKinnon's analogy between the mobility of cars and the mobility of containers as the basis for a warrantless search. We conclude that McKinnon, supra, 7 Cal.3d 899 is no longer to be followed on this point. A container consigned for shipment is subject to the same rule as other containers outside of the specific and well-delineated context of an automobile search: “Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.” (Jacobsen, supra, 466 U.S. at p. 114, fn. omitted; see Place, supra, 462 U.S. at p. 701.)
In the present case, the mobility of the package constituted exigent circumstances justifying Officer Totorica’s seizure of the FedEx package *1240 without a warrant so long as he had probable cause to believe it contained contraband. But seizure of the package by the police negated its mobility. Absent some other exception to the warrant requirement, the Fourth Amendment required the police to obtain a search warrant before opening the package after it had been seized.
III.
In addition to invoking exigent circumstances, the District Attorney argues that the plain smell of marijuana emanating from the package was, by itself, sufficient justification for the warrantless search. As we explain, however, we do not decide this issue because the District Attorney forfeited the argument by failing to raise it in opposition to petitioner’s suppression motion in the superior court.
In order to understand our finding of forfeiture here, it is important to distinguish between two different legal claims involving the sense of smell. The first is that a distinctive odor can provide probable cause to believe that a closed container contains contraband. This proposition is well established by cases that have found the smell of contraband sufficient to establish the probable cause necessary for police to obtain a search warrant (see Johnson v. United States (1948) 333 U.S. 10, 13 [92 L.Ed. 436, 68 S.Ct. 367]) or to conduct a search or seizure under the automobile or exigent circumstances exception to the warrant requirement (see People v. Cook (1975) 13 Cal.3d 663, 668-670 [119 Cal.Rptr. 500, 532 P.2d 148], disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390 [87 Cal.Rptr.3d 209, 198 P.3d 11]; People v. Gale (1973) 9 Cal.3d 788, 794 [108 Cal.Rptr. 852, 511 P.2d 1204]; U.S. v. McCoy (8th Cir. 2000) 200 F.3d 582, 584; U.S. v. Downs (10th Cir. 1998) 151 F.3d 1301, 1303; U.S. v. Pierre (5th Cir. 1992) 958 F.2d 1304, 1310; Gilliam v. U.S. (D.C. 2012) 46 A.3d 360, 364; Dies v. State (Miss. 2006) 926 So.2d 910, 918; People v. Kazmierczak (2000) 461 Mich. 411 [605 N.W.2d 667, 672]; State v. Moore (2000) 90 Ohio St.3d 47 & fns. 1, 2 [2000 Ohio 10, 734 N.E.2d 804, 807-808] [collecting cases]).
The second claim is that the plain smell of marijuana by itself justifies the search of a container without a warrant, separate and apart from any other exception to the warrant requirement. Here the claim is not that the smell of marijuana can establish the probable cause necessary to obtain a warrant or to invoke an exception to the warrant requirement, but that the police simply do not need a warrant to search a packagé that reeks of marijuana. It is this claim that the District Attorney presses in this court but failed to raise in the superior court.
In opposing petitioner’s motion to suppress in the trial court, the District Attorney argued that the smell of marijuana constituted probable cause to *1241 support the seizure and search of the package without a warrant in light of exigent circumstances arising from the package’s mobility. In support of this argument, the District Attorney offered Officer Totorica’s testimony that the package smelled of marijuana and that “[t]he odor was stronger as I got closer to the package.” Officer Totorica also testified that he smelled marijuana upon entering the store and that the entry was an “estimated 25 feet” from the package, although these assertions were not included in his incident report. Lieutenant Haley similarly testified that “there was a distinct odor of marijuana coming from [the package].” Both officers said they were trained and experienced in smelling marijuana. The smell was also apparent to the store employee, Nancy Her, who did not indicate she had any special training.
The trial court upheld the seizure of the package under the exigent circumstances exception to the warrant requirement, and this ruling is fairly understood to encompass a determination that the evidence adduced at the suppression hearing established probable cause that the package contained contraband. As noted, petitioner does not challenge the legality of the seizure—and for good reason: The trial court’s implicit finding of probable cause is supported by substantial evidence, and the existence of probable cause, together with the exigent circumstance of the package’s mobility, justified Officer Totorica’s seizure of the package without a warrant. (See Place, supra, 462 U.S. at p. 701.) As for the subsequent search, the trial court upheld it on the basis of inevitable discovery, but the Court of Appeal rejected that theory and the District Attorney does not defend it here.
After petitioner sought a writ of mandate in the Court of Appeal, the Court of Appeal on its own initiative issued a letter to the parties requesting an informal response to several questions, including the following: “Do the courts recognize a ‘plain smell’ doctrine that would have allowed the search and seizure of the package without a warrant?” This was the first time in the case that the parties were asked to consider whether the smell of marijuana could alone provide an independent and sufficient basis for a warrantless search or seizure, and not just a basis for establishing probable cause. The District Attorney responded in the affirmative, and the parties proceeded to brief and argue this issue in the Court of Appeal. The Court of Appeal dedicated a significant portion of its opinion to rejecting the theory that the plain smell of marijuana can alone justify a warrantless search, and the District Attorney then sought our review on this issue.
In this court, the District Attorney argues that the plain smell of marijuana negated any reasonable expectation of privacy in the package, drawing an analogy to the following dictum in a footnote from the United States Supreme Court’s decision in Sanders: “Not all containers and packages found by police during the course of a search will deserve the full protection of the *1242 Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.” (Sanders, supra, 442 U.S. at p. 765, fn. 13; see Robbins v. California (1981) 453 U.S. 420, 428 [69 L.Ed.2d 744, 101 S.Ct. 2841] (plur. opn.) [“to fall within the [exception described in Sanders’ s footnote] a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer”], revd. on other grounds in Ross, supra, 456 U.S. 798.) Although some courts, relying on Sanders or Robbins, have held that the plain smell of contraband justifies the search of a closed container without a warrant (see U.S. v. Haley (4th Cir. 1982) 669 F.2d 201, 204, fn. 3; U.S. v. Epps (11th Cir. 2010) 613 F.3d 1093, 1098), other courts have rejected this view (see U.S. v. Johns (9th Cir. 1983) 707 F.2d 1093, 1096, revd. on other grounds in Johns, supra, 469 U.S. at p. 487; U.S. v. Dien (2d Cir. 1979) 609 F.2d 1038, 1045). Since Sanders, neither the United States Supreme Court nor this court has ever upheld a warrantless search of a closed container solely on the ground that its smell, appearance, or other outward characteristic clearly announced its contents. Thus, it is fair to say that the legal theory urged by the District Attorney is unsettled in the extant case law and novel in this court’s jurisprudence.
Although it is not improper for a reviewing court to decide the merits of an alternate ground for affirming the judgment of a trial court even if that ground was not argued by the parties below (see, e.g., People v. Robles (2000) 23 Cal.4th 789, 800-801 & fn. 7 [97 Cal.Rptr.2d 914, 3 P.3d 311]), we have cautioned that appellate courts should not consider a Fourth Amendment theory for the first time on appeal when “the People’s new theory was not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence . . .” or when “the defendant had no notice of the new theory and thus no opportunity to present evidence in opposition.” (Green v. Superior Court (1985) 40 Cal.3d 126, 137-138 [219 Cal.Rptr. 186, 707 P.2d 248].) In this case, although the facts adduced at the suppression hearing were sufficient to establish probable cause that the package contained contraband, the evidence on the issue of smell was not extensive. Neither the District Attorney nor the defense offered evidence that provided any depth or detail concerning the intensity or other qualities of the smell detected by the officers. Nor does the record contain much information about the extent or limitations of the officers’ training or experience in detecting marijuana through the sense of smell. Because the District Attorney did not raise the plain smell theory at the suppression hearing, the parties had no occasion to put forward the most probative evidence for or against the proposition that the plain smell of marijuana was, by itself, sufficient to justify the warrantless search. In light of the limited record before us, we *1243 decline to resolve whether the smell of marijuana can alone justify the warrantless search of a closed container and, if so, under what circumstances.
The way the plain smell issue arose in this case prompts us to caution appellate courts against proposing, on their own initiative, novel theories that the parties did not address in the course of litigating a motion to suppress in the trial court. Our admonition is rooted in principles of judicial restraint, which have particular salience when courts are confronted with unsettled constitutional issues. “ ‘In an emerging area of the law, we do well to tread carefully and exercise judicial restraint, deciding novel issues only when the circumstances require.’ ” (Matrixx Initiatives, Inc. v. Doe (2006) 138 Cal.App.4th 872, 881 [42 Cal.Rptr.3d 79], quoting Mateel Environmental Justice Foundation v. Edmund A. Gray Co. (2003) 115 Cal.App.4th 8, 20, fn. 6 [9 Cal.Rptr.3d 486].)
CONCLUSION
For the reasons above, we conclude that the seizure of the package was lawful but the warrantless search of the sealed package was not justified by exigent circumstances and that the District Attorney forfeited the argument that the plain smell of marijuana alone justified the search without a warrant. Because the Court of Appeal’s decision did not distinguish between evidence obtained from the impermissible warrantless search and any evidence that might have been obtained from the permissible warrantless seizure, we affirm in part and reverse in part the judgment of the Court of Appeal and remand the matter to that court with directions to issue a peremptory writ of mandate. The peremptory writ shall direct the superior court to vacate its order denying petitioner’s motion to suppress evidence and conduct further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.