Filed 1/7/14  P. v. Walker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ERWIN MAURICE WALKER,<br><br>　　　Defendant and Respondent. | E058384<br><br>(Super.Ct.No. INF1200658)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Charles Everett Stafford, Jr., Judge.  Reversed.

Paul E. Zellerbach, District Attorney, and Ivy B. Fitzpatrick, Deputy District Attorney, for Plaintiff and Appellant.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Respondent.

In October 2012, plaintiff and appellant the People charged defendant and respondent Erwin Maurice Walker by first amended information with burglary (count 1 –

1

Pen. Code, § 459),[1] receipt of stolen property (count 2 – § 496, subd. (a)), possession of burglary tools (count 3 – § 466), unlawful taking of a vehicle (count 4 – Veh. Code § 10851, subd. (a)), and receipt of a stolen vehicle (count 5 – § 496d, subd. (a)). The People additionally alleged defendant had suffered three prior strike convictions (§§ 667, subds. (c) & (e)(1) & 1170.12, subd. (c)(1)) and one prior prison term (§ 667.5, subd. (b)).

Defendant filed a motion to suppress evidence seized pertinent to counts 1 through 3, which the court granted. The People found they were unable to proceed and the court dismissed counts 1 through 3 on defendant's motion.[2] The People appeal contending the court erroneously suppressed the relevant evidence pertaining to counts 1 through 3. We reverse.

## FACTS AND PROCEDURAL HISTORY

At the hearing on defendant's motion to suppress the evidence, Palm Springs police officer Michael Casavan testified that on January 28, 2012, around 7:30 p.m., he was patrolling the parking lot adjacent to a number of businesses, including a Home Depot, Marshalls, and a number of restaurants. There had been a history of vehicle burglaries and thefts in the area. Casavan witnessed defendant riding a bicycle toward

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The People also indicated they were unable to proceed as to counts 4 and 5 due to the victim's refusal to cooperate. Defendant moved for dismissal of counts 4 and 5, which the court also granted. Counts 4 and 5 are not the subject of the instant appeal.

2

him.  Casavan parked his patrol vehicle, exited it, and approached defendant.  Casavan said to defendant, "[h]ey, man."  Defendant rode over to Casavan and stopped.

Casavan asked defendant what he was doing.  Defendant said he was going to get fast food.  Casavan asked if he could search the backpack defendant was carrying.  Defendant said "'[y]es.'"  Casavan looked into defendant's backpack where he found two pairs of new shoes, at least one pair with an attached Marshalls' tag.  Defendant had no bag or receipt for the shoes.

Casavan asked if he could search defendant's pockets.  Defendant said "'[y]es.'"  Inside defendant's pockets Casavan found a wire cutter and a pair of pliers.  Casavan detained defendant on suspicion of shoplifting and placed defendant in his vehicle.  Casavan went to Marshalls where he spoke to the manager who confirmed the shoes were items sold in the store.  In the trash can in the shoe department, Casavan found two discarded security sensors.

The court observed, "[w]e are not in a police state.  The police don't have carte blanche to contact anybody and to cause a search to occur unless there is something that is somewhat out of the ordinary."  The court further noted that "police officers can make a consensual contact, but it has to be within the confines of the performance of their duties as a police officer.  And there has to be some circumstance that would give rise to the belief that criminal activity occurred."  The court granted defendant's motion to suppress reasoning there was no justification for Casavan's request to search defendant's

backpack: "The officer had nothing whatsoever to give him any cause to believe at all that [] [defendant] may have been involved in criminal activity."

DISCUSSION

The People contend the court erred in granting defendant's motion to suppress because no particularized suspicion is necessary to warrant a consensual encounter and search of an individual. We agree.

"'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.' [Citations.] 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.) "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. [Citations.]" (*Florida v. Royer* (1983) 460 U.S. 491, 497.)

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. [Citations.] Even when law enforcement officers have no basis for suspecting a particular

4

individual, they may pose questions, ask for identification, and request consent to search luggage – – provided they do not induce cooperation by coercive means. [Citation.] If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." (*United States v. Drayton* (2002) 536 U.S. 194, 200-201 (*Drayton*).)

Here, there was no coercion in Casavan's interaction with defendant. Casavan greeted defendant to which defendant responded by riding voluntarily over to Casavan. Casavan testified he did not order or even ask defendant to stop. He never activated the lights or sirens on his patrol vehicle. Casavan did not request or order defendant to stay in any particular location. Indeed, Casavan testified he did not initially detain defendant and defendant was free to leave at any time.

Casavan testified he asked defendant if he could search defendant's backpack to which defendant assented. After finding the shoes, Casavan asked if he could search defendant's pockets to which defendant also agreed. Casavan's encounter with defendant, including his search of defendant's backpack and pockets, was entirely consensual and, therefore, not violative of the Fourth Amendment via the Fourteenth Amendment.

Contrary to the court's repeated assertions, no particularized suspicion is required in order for an officer to engage in a consensual search: "The Fourth Amendment permits police officers to approach [] [individuals] at random to ask questions and to request their consent to searches, provided a reasonable person would understand that he or she is free to refuse. [Citation.]" (*Drayton, supra,* 536 U.S. 194 at p. 197 [Bus

5

passengers' acquiescence to police officer's request to check their bags while they were on bus during refueling with no particularized suspicion and no declaration that passenger need not comply did not violate Fourth Amendment prohibition against unreasonable searches.].)

Indeed, in *Drayton* the defendants were arguably under at least somewhat more pressure to comply with the officer's requests as the defendants were approached while already in an enclosed area, a bus, which would have required that they pass closely by several officers if they wished to leave. (*Drayton*, *supra*., 536 U.S. 194 at pp. 197-199.) Here, defendant was in an open parking lot on a bike and could have simply ridden away when greeted by the lone officer. Indeed, as noted in *Drayton*, "[i]t is beyond question that had this encounter occurred on the street, it would be constitutional." (*Id.* at p. 204.)

Likewise, the court's reasoning that the encounter was not consensual because "the majority of people are going to let them see because it's a police officer asking them. It's somebody that is wearing a uniform, a badge, and a gun" does not withstand scrutiny. Although Casavan testified he was wearing a uniform and exited a marked police car, presumably also wearing a gun, "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, [and] no command . . . ." (*Drayton, supra,* 536 U.S. 194 at p. 204.)

"Officers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort. Much the same can be said for wearing sidearms. That most law enforcement officers are armed is a fact well known to the public. The

6

presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." (*Drayton, supra,* 536 U.S. 194 at pp. 204-205.) "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.' [Citation.]" (*Id.* at p. 205)  Thus, the fact that an armed, uniformed police officer requests permission to speak with and search an individual does not transform a consensual encounter into one violative of the Fourth Amendment.  Therefore, the court erred in granting defendant's motion to suppress.

DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ           
P. J.

We concur:

HOLLENHORST     
        J.

CODRINGTON     
        J.