Filed 3/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B282810 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA141221) |
| v. | |
| COREY JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick Connolly, Judge. Affirmed.

Melissa L. Camacho-Cheung, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following the denial of a motion to suppress evidence found during a search of his car, Corey Johnson pleaded no contest to one count of sale of a controlled substance (cocaine base) and admitted that the crime had been committed to benefit a criminal street gang and that he had previously been convicted of a serious felony within the meaning of the three strikes law. On appeal Johnson contends the motion to suppress should have been granted because the warrantless search of his car was neither a valid search incident to his arrest nor supported by probable cause to believe the car contained contraband or evidence of criminal activity. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Johnson's Arrest and the Search of His Car*

While monitoring the Nickerson Garden Housing Development on closed circuit television on May 5, 2016, Los Angeles Police Officer Darryl Danaher saw a woman approach a man as he was walking by a baseball field.[1] The man produced a knotted clear plastic bag and poured off-white, rock-like substances into his left hand. He then extended his left hand.[2] The woman picked out one of the off-white solids with her right hand and handed what appeared to be a $5 bill to the man. The two individuals then walked away from each other.

---

[1] The description of the events leading to Johnson's arrest and the search of his car is based on testimony from his preliminary hearing.

[2] Danaher had still photographs printed from the video feed that captured this scene.

As the transaction was taking place, Officer Danaher called three narcotics officers into the surveillance room to watch with him. When the exchange was completed, the narcotics officers left to try to apprehend the man. Danaher continued watching the closed circuit feed and observed the man walk a short distance, enter a car and drive away. He relayed a description of the car and its license plate number to the narcotics officers.

A short time later the man returned, parked the car inside the housing development and got out from the driver's side. Officer Danaher watched him walk away from the parking area and again transmitted information about the man's location to the other officers.

Two officers, Detective Michael Owens and Officer Joshua Fluty, made contact and arrested Johnson. Owens searched Johnson's pockets and found car keys. He did not find any money or drugs. Owens and Fluty then drove to the parking lot where Johnson's car had been parked, approximately two blocks from the site of the arrest.

The two officers parked their car and approached the vehicle Johnson had been driving. A young woman was in the driver's seat. Officer Fluty walked to the passenger side of the car and saw a small bag containing what appeared to be marijuana in the middle of the front passenger seat. Fluty reported this to Detective Owens, who asked the young woman to step outside the car. When she did, Owens smelled marijuana and saw the bag with marijuana on the passenger seat.[3] The

---

[3] Neither Detective Owens nor Officer Fluty estimated the amount of marijuana he saw in the bag on the passenger seat.

woman told Owens she was watching the car for her uncle. Fluty asked her uncle's name; she replied, "Corey."

Detective Owens searched the car. In the armrest of the rear passenger door he found a clear plastic bag containing several off-white solids that appeared to be rock cocaine. He also found a $5 bill and an electronic benefits transfer (EBT) card with the name "Corey Johnson." The substance in the baggie was subsequently tested and found to contain 1.37 grams of cocaine base.

2. *The Motion To Suppress*

After being charged with possession of cocaine base for sale (Health & Saf. Code, § 11351.5) and sale of a controlled substance (cocaine base) (Health & Saf. Code, § 11352), Johnson waived his right to counsel, pleaded not guilty and moved to suppress the evidence discovered in the warrantless search of his car. (Pen. Code, § 1538.5.) Several weeks later Johnson withdrew his waiver of counsel. Appointed counsel filed a supplemental motion to suppress.

Johnson's motion was considered by the court in conjunction with the preliminary hearing. After hearing testimony and argument from counsel, the court denied the motion.

The court first found there was probable cause to arrest Johnson after the officers witnessed him selling what appeared to be a controlled substance. (The court pointed out that, although Johnson's face was not identifiable on the video, his shirt and hat—a red and gray/black baseball cap and a shirt with "23" on it—were "unbelievably unique.") The court then ruled under *Arizona v. Gant* (2009) 556 U.S. 332 [129 S.Ct. 1710, 173 L.Ed.2d 485] (*Gant*) the officers were entitled to search Johnson's car "if

4

the police have reason to believe that the vehicle contained evidence relevant to the crime of the arrest . . . . Doesn't matter where it is necessarily. Doesn't matter that it's two blocks away. And under these particular facts, it was pretty clear that they had reasonable belief and probable cause to believe that the narcotics that he had just witnessed in the defendant's hand and the money that was exchanged was kept in a safe place, the safe place being the car that he just exited."

As a second basis to uphold the search the court ruled, because Johnson's car had just been driven, the officers had ample evidence to believe he had transported marijuana in violation of Health and Safety Code section 11360, subdivision (a).[4]

3. *Johnson's Plea Agreement*

Johnson was originally charged in a felony complaint with one count of possessing cocaine base for sale and one count of selling, furnishing or transporting a controlled substance (cocaine base). The information filed following denial of the motion to suppress evidence added special allegations that the crimes had been committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)) and Johnson had suffered one prior drug offense (Health & Saf. Code, § 11370.2, subd. (a)) and three prior serious felony convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12) and had served five prior prison terms for felonies (Pen. Code, § 667.5, subd. (b)).

---

[4]    The court noted the offense had occurred in May 2016, "nearly four months before the change in law that legalized marijuana."

Pursuant to a negotiated agreement, Johnson pleaded no contest to selling cocaine base and admitted the offense had been committed to benefit a criminal street gang allegation and he had one prior strike conviction.  The second charge and additional special allegations were dismissed.  Johnson was sentenced to an eight-year state prison term.[5]

## DISCUSSION

1. *Standard of Review*

"'A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable." ([Pen. Code,] § 1538.5, subd. (a)(1)(A).)  A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search.  [Citation.]  "The standard of appellate review of a trial court's ruling on a motion to suppress is well

---

[5] An appeal of the denial of a motion to suppress evidence following a plea of guilty or no contest is authorized by Penal Code section 1538.5, subdivision (m), and California Rules of Court, rule 8.304(b)(4)(A).  As the Attorney General explains in his brief in this court, the failure of Johnson's attorney to renew the motion to suppress following the filing of the information ordinarily forfeits the issue for appellate review.  (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896.)  However, the trial court assured Johnson before he entered his plea that he would be able to appeal the ruling on the suppression motion.  Given that representation, the Attorney General does not assert the issue has been forfeited.  (See generally *People v. Hart* (1999) 74 Cal.App.4th 479, 486-487 [to determine whether defense counsel was constitutionally ineffective in failing to preserve the legality of the search as an issue for appeal, appellate court must determine the legality of the search].)

established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.""" (*People v. Suff* (2014) 58 Cal.4th 1013, 1053; accord, *People v. Macabeo* (2016) 1 Cal.5th 1206, 1212; *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223; see *People v. Ayala* (2000) 24 Cal.4th 243, 279.)

Although it is a settled principle of appellate review that a correct decision of the trial court will be affirmed even if based on erroneous reasons, the Supreme Court has cautioned that "appellate courts should not consider a Fourth Amendment theory for the first time on appeal when 'the People's new theory was not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence . . .' or when 'the defendant had no notice of the new theory and thus no opportunity to present evidence in opposition.'" (*Robey v. Superior Court*, *supra*, 56 Cal.4th at p. 1242.)  However, when "the record fully establishes another basis for affirming the trial court's ruling and there does not appear to be any further evidence that could have been introduced to defeat the theory," a ruling denying a motion to suppress will be upheld on appeal. (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138-139; see *People v. Walker* (2012) 210 Cal.App.4th 1372, 1383; *People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1004-1005.)

The question whether relevant evidence obtained by assertedly unlawful means—that is, in violation of the Fourth Amendment—must be excluded is determined by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 24; *People v. Macabeo*, *supra*, 1 Cal.5th at

p. 1212; see *People v. Schmitz* (2012) 55 Cal.4th 909, 916; *People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11.)

    2. *Governing Law*

      a. *Search of an automobile incident to arrest*

A search incident to a lawful arrest is a well-established exception to the general rule prohibiting warrantless searches. (*Riley v. California* (2014) 573 U.S. ___ [134 S.Ct. 2473, 2482-2483, 189 L.Ed.2d 430]; *United States v. Robinson* (1973) 414 U.S. 218, 224 [94 S.Ct. 467, 38 L.Ed.2d 427]; *People v. Macabeo*, *supra*, 1 Cal.5th at p. 1213.)

In *Chimel v. California* (1969) 395 U.S. 752, 763 [89 S.Ct. 2034, 23 L.Ed.2d 685] the Supreme Court "laid the groundwork for most of the existing search incident to arrest doctrine." (*Riley*, *supra*, 573 U.S. at p. ___.) As the rule for assessing the reasonableness of a search incident to arrest, the *Chimel* Court held, "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel*, at pp. 762-763.)

The Supreme Court considered the application of the *Chimel* rule in the context of a vehicle search in *New York v. Belton* (1981) 453 U.S. 454 [101 S.Ct. 2860, 69 L.Ed.2d 768]

8

(*Belton*). The Court held, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," as well as "any containers found within the passenger compartment." (*Id.* at p. 460.) *Thornton v. United States* (2004) 541 U.S. 615 [124 S.Ct. 2127, 158 L.Ed.2d 905] extended *Belton* to allow vehicle searches incident to the arrest of individuals who were "recent occupants" of a vehicle. (*Id.* at pp. 622-623.) "For years, *Belton* was widely understood to have set down a simple, bright-line rule. Numerous courts read the decision to authorize automobile searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search. [Citation.] Even after the arrestee had stepped out of the vehicle and had been subdued by police, the prevailing understanding was that *Belton* still authorized a substantially contemporaneous search of the automobile's passenger compartment." (*Davis v. United States* (2011) 564 U.S. 229, 233 [131 S.Ct. 2419, 180 L.Ed.2d 285].)

 *Gant* rejected this broad interpretation of *Belton*: "To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest," even when the arrestee was out of reach of the passenger compartment, would "untether the rule from the justifications underlying the *Chimel* exception." (*Gant, supra*, 556 U.S. at p. 343.) Such a broad reading of the search incident to arrest exception, the Court explained, would "seriously undervalue[] the privacy interests at stake." (*Id.* at pp. 344-345.) Accordingly, the Court in *Gant* adopted a "new, two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching

distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" (*Davis v. United States, supra*, 564 U.S. at pp. 234-235, citing *Gant,* at p. 343.) *Gant* noted that the second prong of the test flowed not from *Chimel*, but from Justice Scalia's concurrence in *Thornton v. United States*, *supra*, 541 U.S. at page 632, and was justified by "circumstances unique to the vehicle context." (*Gant,* at pp. 335, 343; see also *People v. Evans* (2011) 200 Cal.App.4th 735, 745; *People v. Nottoli* (2011) 199 Cal.App.4th 531, 549.) Where neither justification is present, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Gant,* at p. 351.)

　　b. *The automobile exception to the warrant requirement*

　　While limiting the justifications for the search of a vehicle incident to the arrest of one of its recent occupants, the Supreme Court in *Gant* recognized that "[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." (*Gant*, *supra*, 556 U.S. at p. 346.) In particular, the Court emphasized, "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* [(1982)] 456 U.S. 798, 820-821 . . . authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of the arrest, and the scope of the search authorized is broader." (*Gant*, at p. 347; see *Missouri v. McNeely* (2013) 569 U.S. 141, 150, fn. 3 [133 S.Ct. 1552, 185 L.Ed.2d 696] [the automobile exception is one of a "limited class of tradition exceptions to the warrant requirement that apply categorically

and thus do not require an assessment of whether the policy justifications underlying the exception, which may include exigency-based considerations, are implicated in a particular case"].)

Under the so-called automobile exception officers may search a vehicle without a warrant if it "is readily mobile and probable cause exists to believe it contains contraband" or evidence of criminal activity. (*Pennsylvania v. Labron* (1996) 518 U.S. 938, 940 [116 S.Ct. 2485, 135 L.Ed.2d 1031]; see *Robey v. Superior Court, supra*, 56 Cal.4th at p. 1234 ["[i]n *Ross*, the high court held that when police have probable cause to believe a vehicle is carrying evidence or contraband, the scope of a search may extend to 'every part of the vehicle that might contain the object of the search,' including the glove compartment, the trunk, and even the upholstery"].) Probable cause exists when, considering the totality of the circumstances, the "known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found. . . ." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [116 S.Ct. 1657, 134 L.Ed.2d 911]; see *People v. Farley* (2009) 46 Cal.4th 1053, 1098 [probable cause to search exists when, based upon the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place]; see also *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 369-370 [probable cause requires a showing that makes it substantially probable there is specific property lawfully subject to seizure presently located in the particular place to be searched; "'[t]he showing required in order to establish probable cause is less than a preponderance of the evidence or even a prima facie case'"].)

11

### 3. *The Search of Johnson's Automobile Was Not a Valid Search Incident to His Arrest*

Johnson concedes his arrest after Officer Danaher and other officers observed him engage in what appeared to be a hand-to-hand drug transaction was supported by probable cause. Nonetheless, he contends the trial court erred in ruling the search of his car was a valid search incident to arrest under *Gant*, *supra*, 556 U.S. 332 because the car was two blocks away from the site of his arrest. We agree.

As discussed, *Gant* established a two-part rule for a valid automobile search incident to a recent occupant's arrest: Either the arrestee is within reaching distance of the vehicle during the search (thereby justifying the search to protect officer safety or prevent the destruction of evidence), or the police have reason to believe the car contains evidence relevant to the crime of arrest. (*Gant*, *supra*, 556 U.S. at p. 343.) Thus, the Attorney General is correct in observing that the arrestee's inability to access the car does not preclude a search under *Gant* if the police reasonably believe it contains evidence of the offense for which the individual has been arrested. (See, e.g., *People v. Evans*, *supra*, 200 Cal.App.4th at pp. 745-746; *People v. Nottoli*, *supra*, 199 Cal.App.4th at p. 551.) But that *Gant* permits an automobile search as a contemporaneous incident to arrest even though the arrestee no longer has access to the car (for example, because he was tased and lying on the ground as in *Evans* or handcuffed and sitting in a patrol car as in *Nottoli*) does not mean that proximity of the search to the time and place of arrest is irrelevant to an evaluation of its validity.

In his opinion for the Court in *Gant*, Justice Stevens twice noted that the second aspect of the two-part rule announced in

12

that case was based on Justice Scalia's suggestion in his concurring opinion in *Thornton v. United States*, *supra*, 541 U.S. 615.  (*Gant*, *supra*, 556 U.S. at pp. 335 ["following the suggestion in Justice Scalia's opinion concurring in the judgment in that case [citation], we also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense might be found in the vehicle"], 343 ["[a]lthough it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle,'" citing Justice Scalia's concurring opinion in *Thornton*].) It thus becomes crucial to determine exactly what Justice Scalia suggested.

In *Thornton v. United States*, *supra*, 541 U.S. 615, the Supreme Court upheld the search of the passenger compartment of a car as a contemporaneous incident of arrest under *Belton* even though the officer had initiated contact with the arrestee after he had stepped out of his vehicle.  (*Thornton*, at p. 617.) The Court explained, "In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. . . .  A custodial arrest is fluid and '[t]he danger to the police officer flows from *the fact of the arrest*, and its attendant proximity, stress and uncertainty' [citation]."  (*Id.* at p. 621.)

Justice Scalia (joined by Justice Ginsburg) concurred in the judgment.  (*Thornton v. United States*, *supra*, 541 U.S. at p. 625

13

(conc. opn. of Scalia, J.).)[6] Justice Scalia noted that Thornton was handcuffed and secured in the back of a patrol car when the passenger compartment of his car was searched; "[t]he risk that he would nevertheless 'grab a weapon or evidentiary ite[m]' from his car was remote in the extreme." (*Ibid*.) "If *Belton* searches are justifiable," Justice Scalia reasoned, "it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." (*Id*. at p. 629.) The Justice continued, "There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested. The fact of prior lawful arrest distinguishes the arrestee from society at large, and distinguishes a search for evidence of *his* crime from general rummaging. Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended." (*Id*. at p. 630.) Thus, Justice Scalia concluded, he would "limit *Belton* searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (*Id*. at p. 632.)[7]

---

[6] In her opinion concurring with the majority in part, Justice O'Connor also expressed tentative agreement with Justice Scalia's approach to the issue of an automobile search incident to arrest, but declined to adopt it because the parties had not had an opportunity to speak to its merit. (*Thornton v. United States*, *supra*, 541 U.S. at pp. 624-625 (conc. opn. of O'Connor, J.).)

[7] In a separate concurring opinion in *Gant*, Justice Scalia explained his preference, as he had indicated in *Thornton*, was to abandon entirely the application of the officer-safety rationale of

Significantly for the argument advanced by Johnson in the case at bar, Justice Scalia's suggested approach in *Thornton*, expressly adopted by the Court in *Gant*, was predicated on the reasonableness of a search for evidence "when and where the perpetrator of a crime is lawfully arrested." (*Thornton v. United States*, *supra*, 541 U.S. at p. 630 (conc. opn. of Scalia, J.).) It was those searches, "permitted by Justice Scalia's opinion" when based on a reasonable belief the vehicle contained evidence relevant to the crime of arrest, that the *Gant* majority concluded "are reasonable for purposes of the Fourth Amendment" as incident to a lawful arrest. (*Gant*, *supra*, 556 U.S. at p. 347.) In other circumstances, legitimate law enforcement evidentiary interests were adequately safeguarded by the ability of officers to search any area of a vehicle in which evidence might be found when there is probable cause to believe the vehicle contains evidence of criminal activity. (*Id.* at pp. 346-347.)

Here, the search of Johnson's car, parked two blocks away from the site of his arrest, did not occur "when and where" he was

---

*Chimel* in the context of an automobile search incident to arrest (that is, the first part of Justice Stevens's two-part rule) and hold, "a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred." (*Gant*, *supra*, 556 U.S. at p. 353 (conc. opn. of Scalia, J.).) However, because there were four dissenting votes to maintain *Belton*'s bright-line rule permitting a warrantless search of the passenger compartment of an automobile incident to any lawful arrest of the occupant, Justice Scalia joined Justice Stevens's opinion to avoid a four-one-four decision that would leave the governing rule uncertain. (*Gant*, at p. 354.)

15

lawfully arrested. Because it did not take place "where the suspect was apprehended," as posited by Justice Scalia (*Thornton v. United States*, *supra*, 541 U.S. at p. 630 (conc. opn. of Scalia, J.)), it was not a valid search incident to Johnson's arrest.

4. *The Search of Johnson's Automobile Was Supported by Probable Cause*

Johnson also contends the trial court's alternate ground for denying his motion to suppress—that Officer Fluty's observation of a bag containing marijuana in plain view on the passenger seat of the car established probable cause to believe the vehicle, which had been recently driven, contained evidence of criminal activity (transportation of marijuana in violation of Health and Safety Code section 11360, subdivision (a))—was erroneous. Johnson is only partially correct. Although the court's reasoning was flawed, its conclusion the search was supported by probable cause was not.

Effective January 1, 2016—four months prior to Johnson's arrest—the Legislature amended Health and Safety Code section 11360, which makes it unlawful to transport, import into the state, sell, furnish, administer or give away marijuana, to define "transport" to mean "transport for sale." (Health & Saf. Code, § 11360, subd. (c); Stats. 2015, ch. 77, § 1.) The practical effect of this amendment is that transportation of marijuana for sale, as opposed to personal use, is now an element of the offense. (See *People v. Ramos* (2016) 244 Cal.App.4th 102, 102-103 [discussing similar "transportation for sale" amendment relating to other controlled substances].) In addition, at the time of Johnson's arrest the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5) provided that the law making possession of not more than 28.5 grams of marijuana an infraction (former

16

Health & Saf. Code, § 11357) "shall not apply to a patient, or a patient's primary caregiver, who possesses . . . marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Because possession of small amounts of marijuana could be lawful and transportation of marijuana intended for personal use was not illegal, Johnson argues observing an unspecified amount of marijuana in a plastic bag did not give the officers probable cause to believe his vehicle contained contraband or evidence of a crime.

Johnson recognizes the Court of Appeal in *People v. Waxler* (2014) 224 Cal.App.4th 712 upheld a warrantless automobile search, notwithstanding the Compassionate Use Act of 1996 (CUA), ruling the observation of any amount of marijuana in a vehicle established probable cause to search the car. The *Waxler* court held, "That California has decriminalized medicinal marijuana in some situations and has reduced the punishment associated with possession of up to an ounce of marijuana does not bar a law enforcement officer from conducting a search pursuant to the automobile exception. Here, Deputy Griffin was entitled to investigate to determine whether appellant possessed marijuana for personal medical needs and to determine whether he adhered to the CUA's limits on possession." (*Waxler*, at p. 723; see *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1055 [affirming denial of a motion to suppress because "the Compassionate Use Act provides a limited defense against prosecution, but does not provide a shield against reasonable investigations and searches"].)

We need not address Johnson's argument *Waxler* was wrongly decided. While watching the hand-to-hand transaction on the closed circuit television, the officers saw Johnson in

17

possession of a clear plastic bag with multiple off-white, rock-like substances.  The customer took only one of them.  Yet when Detective Owens searched Johnson following his arrest, he found no other drugs on Johnson's person.  He also did not find the $5 bill that had been given to Johnson during the exchange.  Because Johnson had entered his car immediately after the transaction with the woman, Owens had a substantial basis to believe that Johnson left the plastic bag with the remaining rock-like objects and the money he had been paid in the car and that a search of the vehicle would, therefore, disclose contraband or evidence of criminal activity.  In short, Owens had probable cause to search the car under the automobile exception to the general prohibition on warrantless searches.  (See *Pennsylvania v. Labron, supra*, 518 U.S. at p. 940; *Robey v. Superior Court, supra*, 56 Cal.4th at p. 1234.)  The motion to suppress was properly denied.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.

18