Filed 12/20/24  P. v. Davis CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>BILLIE EARL DAVIS,<br><br>    Defendant and Appellant. | F087690<br><br>(Super. Ct. No. BF194245A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Poochigian, J. and Snauffer, J.

## INTRODUCTION

Appellant and defendant Billie Earl Davis (appellant) was pulled over for a traffic violation and found in possession of narcotics, a firearm, and ammunition. The trial court denied his motion to suppress. Thereafter, he pleaded no contest to drug and firearm offenses and he was sentenced to the indicated term of three years.

On appeal, his appellate counsel filed a brief which summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS

The following evidence was introduced at the evidentiary hearing on appellant's motion to suppress. Officer Stella Chavez of the Bakersfield Police Department was the only witness and testified as follows, supported by photographs from her body-worn camera.

At approximately 6:48 p.m. on April 10, 2023, officers Chavez and Medrano were in uniform and on patrol in a marked police vehicle. Medrano was driving and Chavez was in the front passenger seat.

Chavez testified they were traveling northbound on Donna Avenue in Bakersfield, when she observed a grey Ford Focus pass them in the opposite southbound lane. Chavez testified the Ford's rear window was completely covered by a black plastic bag, which constituted an obstruction in violation of Vehicle Code[1] section 26708, subdivision (a)(1).[2]

---

[1] All further statutory citations are to the Vehicle Code unless otherwise indicated.

[2] Section 26708, subdivision (a) states: "(a)(1) A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows."

2.

Medrano performed a U-turn, pulled behind the Ford, and activated the patrol vehicle's siren and overhead red lights to conduct a traffic stop to investigate the rear window obstruction.[3]

**The Traffic Stop**

Chavez testified the Ford immediately stopped when the patrol vehicle's siren and lights were activated. Appellant was the driver and sole occupant. Within seconds of stopping, appellant got out of the Ford before the officers approached the vehicle. He walked away from the vehicle and went to the sidewalk.

Chavez testified she became concerned about officer safety as a result of appellant's conduct of immediately walking away from his vehicle, because "[f]rom my training and experience I know that people who try to—their demeanor and them trying to distance themselves from the vehicle leads me to believe that there's something illegal in that vehicle that they're trying to distance themselves from."

Medrano approached appellant and conducted a patdown search for officer safety reasons. He asked appellant to raise his hands to the top of his head and did not place him in handcuffs. Appellant complied with the patdown search, and he refused to consent to a search of the Ford. There is no evidence that Medrano discovered any contraband during the patdown search.[4]

---

Section 26708, subdivision (b)(8) states: "This section does not apply to any of the following," including "[t]he rear window or windows, if the motor vehicle is equipped with outside mirrors on both the left- and right-hand sides of the vehicle that are so located as to reflect to the driver a view of the highway through each mirror for a distance of at least 200 feet to the rear of the vehicle."

[3] "[A] lawful traffic stop occurs when the facts and circumstances known to the police officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or another law." (*People v. Nice* (2016) 247 Cal.App.4th 928, 937–938.)

[4] "During the traffic stop, an officer may ' "take such steps as [are] reasonably necessary to protect [his or her] personal safety and to maintain the status quo during the course of the stop." ' " (*People v. Torres* (2010) 188 Cal.App.4th 775, 785.)

Chavez inspected the Ford and saw normal side mirrors on the front driver's and passenger's doors, and could see her reflection in the front side mirror. However, Chavez testified the window on the front driver's side door was tinted, and also constituted a violation of the Vehicle Code.[5]

## Search of Appellant's Vehicle

Chavez ran a check on defendant's driver's license and was advised that it was suspended. Based on appellant's lack of a valid driver's license, Chavez testified she had authority to impound the Ford pursuant to section 14602.6, subdivision (a)(1), and conduct an inventory search.[6]

Just as Chavez began to conduct the inventory search, appellant attempted to flee the scene. Chavez ran over to assist Medrano, and appellant was arrested and searched.

Chavez conducted the inventory search of the Ford and found a backpack on the floorboard of the front passenger side. The backpack contained a firearm and two jars of marijuana.

## Appellant's Statements

After the discovery of the contraband, Chavez advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Appellant said he understood his rights and answered questions. Appellant said the Ford was his mother's vehicle, he was

---

[5] Tinted windows constitute a Vehicle Code violation and the lawful basis for a traffic stop. (*People v. Esparza* (2023) 95 Cal.App.5th 1084, 1091; § 26708, subd. (a)(2).) Section 26708, subdivisions (d) and (e) state the circumstances where "clear, colorless, and transparent material may be installed, affixed, or applied" to a vehicle's windows, and may not constitute statutory violations, depending upon the degree of light and visibility. (§ 26708, subds. (d)(1)–(5), (e)(1)–(5).)

[6] An officer is authorized to impound a vehicle when the driver does not have a valid driver's license. (§§ 14602.6, subd. (a)(1), 12500, subd. (a).) "If officers are warranted in impounding a vehicle, a warrantless inventory search of the vehicle pursuant to a standardized procedure is constitutionally reasonable." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.)

using the vehicle to move his things from one place to another, and everything in the vehicle belonged to him. Appellant said he tried to flee because he had drugs in his pocket. He also said there were a lot of drugs in the backpack.

## PROCEDURAL BACKGROUND

On October 3, 2023, an information was filed in the Superior Court of Kern County charging appellant with count 1, transportation of cocaine (Health & Saf. Code, § 11352, subd. (a)); count 2, possession of cocaine base for sale (Health & Saf. Code, § 11351.5); count 3, felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)); count 4, felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1)); count 5, misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); count 6, misdemeanor driving with a suspended or revoked license (§ 14601.1, subd. (a)); and count 7, misdemeanor obstruction of a peace officer (Pen. Code, § 148, subd. (a)(1)).

The information alleged the following aggravating circumstance as to count 1, that appellant was armed with a weapon; and as to counts 2 through 4, that his prior convictions and/or juvenile petitions were numerous or of increasing seriousness. (Cal. Rules of Court, rule 4.421(a)(2), (b)(2).)

## APPELLANT'S SUPPRESSION MOTION

On October 23, 2023, appellant filed a motion to suppress evidence (Pen. Code, § 1538.5) and asserted the initial traffic stop was not authorized by the Vehicle Code, he was unlawfully detained, and his vehicle was unlawfully searched without a warrant or probable cause.

On October 26, 2023, the People filed opposition and argued the traffic stop was valid, defendant did not have a valid driver's license, the vehicle was going to be lawfully impounded, and the officers properly conducted an inventory search of the vehicle.

On December 11, 2023, the trial court conducted the evidentiary hearing on appellant's suppression motion. Chavez testified as set forth above.

**The Parties' Arguments**

After Chavez's testimony, the prosecutor argued the officers properly conducted the traffic stop because of Vehicle Code violations for obstruction to the rear window, and the traffic stop revealed the driver's side window was tinted. Appellant attempted to flee before the officers had completed their inspection of the vehicle, and the traffic stop, impoundment, and inventory search were valid.

Appellant's counsel replied the officers lacked reasonable suspicion to conduct the initial traffic stop even if the rear window was obstructed in violation of section 26708, subdivision (a)(1), because the Ford still had two functioning side mirrors that satisfied the exception in subdivision (b)(8), and those two mirrors were visible to the officers when they drove past the Ford and then pulled behind it. Counsel further argued there was no evidence about the degree of the tint on the side window, and whether the tint violated the limits in section 26708, subdivisions (d) and (e). Counsel also argued the officers lacked probable cause to search the Ford for weapons for safety reasons pursuant to *Arizona v. Gant* (2009) 556 U.S. 332,[7] and the inventory search was invalid because it started before appellant attempted to run away.

The prosecutor responded the officers had "probable cause" to pull the vehicle over because of the obstructed rear window in violation of section 26708, subdivision (a)(1). The prosecutor acknowledged that section 26708, subdivision (b)(8) provided an exception to the obstruction violation "if upon inspection the two driver's side mirrors are dually outfitted and the driver can see to the rear 200 feet," but the officers were permitted to conduct the traffic stop to inspect the vehicle and actually

---

[7] *Gant* established a two-part rule for a valid automobile search incident to a recent occupant's arrest: Either the arrestee is within reaching distance of the vehicle during the search (thereby justifying the search to protect officer safety or prevent the destruction of evidence), or the police have reason to believe the vehicle contains evidence relevant to the crime of arrest. (*Arizona v. Gant*, *supra*, 556 U.S. at p. 343; *People v. Johnson* (2018) 21 Cal.App.5th 1026, 1035.)

make that determination. The officers were advised appellant did not have a valid driver's license, and they were authorized to impound the vehicle and conduct an inventory search.

**The Trial Court's Ruling**

The trial court denied appellant's suppression motion and made lengthy findings. The court acknowledged appellant's argument that the Ford's two side mirrors may have negated the underlying violation of the obstructed rear window. However, the court found the "relatively very low standard" for a traffic stop was a reasonable articulable suspicion, and the officers met that standard to conduct the initial traffic stop:

> "[T]he officers in this case seeing a vehicle with large plastic covering the back window as I saw in the pictures there, they were justified in making that initial stop again just to warrant further investigation.… [E]ven if they noticed … a side mirror it still warrants further investigation because the exception to that rule as cited by the defense is very specific. A stop would be necessar[]y to make sure that both side mirrors are present, not just the actual housing, the plastic housing, but the actual glass mirror inside the housing that it's present, that the glass is not broken or missing and technically I think even conduct a test or experiment to see if they are capable of allowing the driver to see a distance of 200 feet to the rear. So all of that justifies further inquiry and examination of the vehicle. And if it turns out that that exception is present then of course there's no underlying violation and they go on. But when it comes to the actual stop itself it doesn't change the fact that it appears to have been justified here based on that legal standard. And then from there I think everything else becomes justified based upon other legal standards including the detention for officer safety and then you have the fleeing, the report of driving on a suspended license, all of that adds up the justification for further inquiry and searches and so forth all the way up to and including probable cause for the arrest and the inventory search. So for all of those reasons I will deny the motion."

## PLEA AND SENTENCE

On January 5, 2024, appellant pleaded no contest to count 1, transportation of a controlled substance; count 3, felon in possession of a firearm; count 6, misdemeanor driving with a suspended or revoked license; and count 7, misdemeanor obstruction of an

officer; and admitted the aggravating circumstance alleged for count 1. The trial court granted the People's motion to dismiss the remaining charges and allegations.

On February 28, 2024, the trial court sentenced appellant to the lower term of three years for count 1, with concurrent terms for the other counts, consistent with the negotiated disposition.

On February 29, 2024, appellant filed a timely notice of appeal.

## DISCUSSION

As noted above, appellant's counsel filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter of October 4, 2024, we invited him to submit additional briefing. He has not done so.

" 'On appeal from a motion to suppress evidence, all presumptions are in favor of the trial court's factual findings, whether express or implied, where supported by substantial evidence, and we review de novo the facts most favorable to the People to determine whether the officer's conduct in performing the traffic stop was reasonable under the Fourth Amendment.' " (*People v. Colbert* (2007) 157 Cal.App.4th 1068, 1072.)

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." (*Heien v. North Carolina* (2014) 574 U.S. 54, 60.) "[A] lawful traffic stop occurs when the facts and circumstances known to the police officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or another law." (*People v. Nice*, *supra*, 247 Cal.App.4th at pp. 937–938.)

To show reasonable suspicion, the detaining officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) Reasonable suspicion requires less than probable cause to believe a violation has occurred. (*People v. Brown* (2015) 61

8.

Cal.4th 968, 981.) The detaining officers may rely on their experience and specialized training to draw inferences from the circumstances, but they cannot rely on a mere hunch or speculation. (*United States v. Arvizu* (2002) 534 U.S. 266, 273–274.)

In this case, the officers had reasonable suspicion to believe appellant violated section 26708, subdivision (a)(1) and conducted the traffic stop, based on Chavez's observations as they drove past and then behind the Ford, of the black plastic bag that completely obstructed the vehicle's rear window. As noted by the trial court, the officers' reasonable suspicion supported the traffic stop to inspect the vehicle and determine whether both side mirrors were "so located as to reflect to the driver a view of the highway through each mirror for a distance of at least 200 feet to the rear of the vehicle," as required to trigger the exception stated in subdivision (b)(8) of section 26708. Upon further inspection, however, Chavez determined the side window was tinted, constituting a separate violation of subdivision (a)(2) of section 26708.

While Medrano conducted a patdown search of appellant, there is no evidence that any contraband was found on him, or that it unnecessarily prolonged the traffic stop. (See, e.g., *People v. Gyorgy* (2023) 93 Cal.App.5th 659, 672.)

Shortly after the initiation of the traffic stop, however, Chavez was advised that appellant's driver's license was invalid. In conducting a traffic stop, an officer's "mission for issuing a ticket or warning for the suspected traffic violation included the task[] of determining whether [the driver] had a valid driver's license…." (*People v. Gyorgy*, *supra*, 93 Cal.App.5th 659, 672.)

At that point, Chavez lawfully decided to impound the vehicle and conduct the inventory search. An inventory search must not be a " 'ruse for a general rummaging in order to discover incriminating evidence.' " (*People v. Williams* (1999) 20 Cal.4th 119, 126; *People v. Torres*, *supra*, 188 Cal.App.4th 775, 791.) There is no evidence the impoundment and inventory search were pretextual ruses motivated by subjectively improper investigatory purposes.

9.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.