Filed 3/15/21  P. v. Renteria CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY RENTERIA,<br><br>    Defendant and Appellant. | D076555<br><br><br>(Super. Ct. No. SCD277450) |


APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Runston G. Maino, Judges.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.


After the trial court denied two motions to suppress the evidence that was discovered by law enforcement during a vehicle search, a jury found Jeffrey Renteria guilty of four counts of possession of a firearm by a felon

(Pen. Code, § 29800, subd. (a)(1))[1] and four counts of prohibited possession of ammunition (§ 30305, subd. (a)(1)). The trial court found that Renteria incurred a prior strike (§§ 667, subds. (b)-(i), 1170.12, 668) and sentenced Renteria to a six-year prison term.

Renteria contends that the trial court erred in denying his motions to suppress evidence. Specifically, Renteria argues that the inventory search conducted by police officers prior to impounding his vehicle for having an expired registration was not reasonable under the Fourth Amendment. We conclude that Renteria's contention lacks merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Based on firearms and ammunition found in his vehicle, an information filed on July 13, 2018, charged Renteria with four counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)) and four counts of prohibited possession of ammunition (§ 30305, subd. (a)(1)). Prior to trial, Renteria twice sought to suppress the evidence found in his vehicle. One motion was filed by defense counsel. The second motion was filed by Renteria after the trial court granted his motion to dismiss counsel and represent himself.

A.    *The First Motion to Suppress*

On September 14, 2018, defense counsel filed a motion to suppress evidence pursuant to section 1538.5. The items sought to be suppressed included "evidence, tangible or intangible, seized pursuant to the illegal detention, search or arrest, including the guns, ammunition, bulletproof vest, and notes found in [Renteria's vehicle]."

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

2

The trial court held a suppression hearing on October 12, 2018, at which it heard testimony from the two police officers involved in the search of Renteria's vehicle and viewed videos from the police officers' body worn cameras, which depict the relevant events.

1.      *The Evidence Presented at the Suppression Hearing*

As San Diego Police Officer Sarah Calvert testified, on the morning of June 27, 2018, she responded to a radio call of a citizen complaint about a Toyota Tacoma, with a camper shell, that had been parked overnight in a residential neighborhood.  After speaking with the reporting party, Officer Calvert pounded on the Toyota and announced her presence, but there was no response or movement inside the vehicle.  Officer Jared Yeatman arrived to assist Officer Calvert.  He also rapped against the Toyota to try to rouse anyone that might be inside, but again, there was no response.

Officer Calvert then ran a check on the license plate and vehicle identification number attached to the Toyota.  In doing so, she discovered two things.  First, when she ran the Texas license plates on the Toyota, she found out the license plates were issued to a Ford, not a Toyota.  Accordingly, the Toyota was "cold plated," meaning that someone had put false license plates on it.  Second, when Officer Calvert ran the vehicle identification number for the Toyota, she discovered that the Toyota had been registered in California, but the registration had expired in April 2017, more than a year earlier.

As Officer Calvert testified, it is the policy of the San Diego Police Department to impound any vehicle with a registration that has been expired for more than six months.  Accordingly, Officer Calvert called for a tow truck immediately upon discovering the expired registration.  A tow truck arrived approximately 30 minutes later.

As Officer Calvert explained, it is the policy of the San Diego Police Department that before a vehicle is impounded, the officers must conduct an inventory search for the purpose of documenting the contents of the vehicle.

When the tow truck driver arrived, he hooked up the Toyota to the tow truck and then raised it up. Because the officers had not yet been able to open the doors to the Toyota to conduct an inventory search, Officer Calvert asked the tow truck driver to lower the Toyota and use a tool to open the driver's side door of the Toyota. The tow truck driver did so.

Immediately after the tow truck driver managed to open a door to the Toyota, Renteria emerged from the back of the Toyota's camper shell. Until seeing Renteria, the officers had no indication that the Toyota was occupied.

The officers informed Renteria that it was illegal to sleep overnight in his vehicle on a public street, and they asked him why the Toyota displayed false Texas license plates. When asked to identify himself, Renteria gave the officers his driver's license. Upon receiving the driver's license, Officer Calvert asked Renteria if he had been arrested before, and Renteria said he did not want to answer any questions "that don't pertain to what's going on here." When the officers continued to ask about the Texas license plates and the expired California registration, Renteria claimed he "made a deal with the DMV." Renteria also told the officers, "I feel like these questions aren't necessary. I told you what's going on."

The officers decided to handcuff Renteria and detain him. Officer Calvert testified she handcuffed Renteria for officer safety while the officers conducted the inventory search because Renteria was being argumentative. When Renteria asked why he was being detained, the officers told him it is a

4

misdemeanor to place false plates on a vehicle.[2]

Officer Calvert then made a phone call to a sergeant. While speaking to the sergeant, Officer Calvert misspoke and said the officers were going to conduct a "search incident to arrest," but then corrected herself, and said they were going to conduct an inventory search. "We're going to do a search incident to arrest on the vehicle, and then impound it obviously for expired reg[istration], and then we will see if there's any other violations to put him in. Inventory search. Okay. Alright. Sorry, that was my words wrong, but yes, inventory search because they're towing it . . . ." Officer Calvert then told Officer Yeatman, "You can just put [Renteria] in the back of my car and then we will do the search of the vehicle and then I'm gonna run him. . . . Um, so do you mind just kind of peeking into the vehicle, uh, inventory search? See if there is anything in the . . . back or whatever, even if [the tow truck driver] has to pull forward because that opens up?"

While Officer Calvert ran a records check on Renteria, Officer Yeatman searched the passenger compartment of the Toyota. In the rear seat area, Officer Yeatman located a gun case. When he opened the case, Officer Yeatman found two fully loaded firearms. In addition, Officer Yeatman found a bulletproof vest and ammunition with a .357 caliber that did not match the two firearms he had located.

---

[2]    It is a misdemeanor offense to display a license plate not issued for the vehicle on which it is displayed with the intent to avoid compliance with vehicle registration requirements. (Veh. Code, §§ 4462.5, 4462, subd. (b).) Under Vehicle Code section 4463, subdivision (a)(1), a person commits an offense that may be prosecuted as either a felony or a misdemeanor when he or she "with fraudulent intent displays or causes or permits to be displayed or have in his or her possession a blank, incomplete, canceled, suspended, revoked, altered, forged, counterfeit, or false . . . license plate . . . ."

After Officer Yeatman discovered the firearms and ammunition, he asked Officer Calvert to come over and look into the Toyota, where he showed her some strange plate-like objects and wiring that he could not identify. The body worn camera videos show that the passenger compartment of the Toyota contained numerous items. Officer Calvert asked Officer Yeatman what else he had found in the Toyota, and he told her he had only gotten to "this first part" of the vehicle. Officer Calvert then told the tow truck driver, "I am gonna cancel the tow and then we'll get a tow out here later because we've got a lot of stuff to do with the car now."

While Officer Yeatman continued to search the Toyota, Officer Calvert inspected the firearms and ammunition that Officer Yeatman had found. Based on the presence of the .357 caliber ammunition, Officer Calvert stated that she believed that there was another firearm in the Toyota.

In conducting a records check, Officer Calvert discovered that Renteria had been convicted of a felony. Also, in checking the serial numbers on the two firearms located in the Toyota, Officer Calvert learned that the firearms were not registered to Renteria. Upon discovering that Renteria had been convicted of a felony, Officer Calvert understood that Renteria had committed the crime of being a felon in possession of a firearm, and she informed Officer Yeatman, "So he's good for the felony arrest."

Officer Yeatman completed his search of the Toyota, including searching inside the camper shell, where he located two more fully loaded firearms that were not registered to Renteria. Those firearms were inside of a bag. Officer Calvert eventually called again for a tow truck to impound the Toyota.

## 2. *The Parties' Arguments and the Trial Court's Ruling*

As relevant here, the motion to suppress filed by defense counsel argued that although inventory searches prior to impounding a vehicle are generally permissible without a warrant, the search conducted by the officers was not a valid inventory search because "the officers['] intent was to search for incriminating evidence, not just take an inventory," which made the search an "invasive and illegitimate" warrantless search under the Fourth Amendment. In addition, the motion argued that even assuming the officers were conducting a valid inventory search, the search exceeded its permissible scope when the officers opened closed containers. The motion argued, "Even if the officers could do an in-depth inventory search, here they exceeded the extent of their search when they looked well beyond what they needed to in order to ensure that Mr. Renteria's belongings were accounted for."

The People's opposition argued that the officers' search of the Toyota was initially for the purpose of conducting an inventory search prior to impounding it, but after the officers discovered that Renteria was a felon with firearms and ammunition in his vehicle, "the lawful inventory search of a impounded vehicle immediately expanded to a full blown warrantless vehicle search . . . for additional weapons."

The trial court denied the motion to suppress. As the trial court explained, the officers were already undertaking to impound the vehicle and conduct an inventory search before they became aware that Renteria was inside the Toyota. Further, as the court explained, when the officers learned that Renteria was a convicted felon with firearms and ammunition in his vehicle, including ammunition that "didn't match with the weapons that they did find," they developed probable cause to search the rest of the vehicle.

7

B.    *The Second Motion to Suppress*

On February 22, 2019, while representing himself, Renteria filed another motion to suppress, in which he sought to suppress all of the evidence obtained during the officers' search of the Toyota.  Renteria argued that the law against sleeping in a vehicle was recently determined to be unconstitutional by a federal judge, and therefore the officers "had no constitutional grounds for responding to the radio call in question," and accordingly no permissible ground for searching the vehicle.  At the subsequent hearing, Renteria also argued that "the officers conducted a[n] inventory search as a ruse to conduct a criminal investigation."

Officer Calvert and Officer Yeatman testified at the suppression hearing in a manner consistent with their testimony at the first hearing.[3] The trial court also considered transcripts of both officers' body worn camera videos, along with a transcript from Renteria's preliminary hearing.[4]

The trial court denied Renteria's suppression motion, explaining that the officers had a valid basis to impound the Toyota and conduct an inventory search because of the false license plates and expired registration.

C.    *The Trial and Sentencing*

Renteria represented himself at trial.  The jury convicted Renteria on all counts, and the trial court found that Renteria incurred a prior strike

---

[3]    The trial court stated that it had read the transcript from the first suppression hearing.  However, Renteria objected to that evidence being considered in connection with the second suppression hearing, and the trial court accordingly indicated that it would not consider it.

[4]    Officer Calvert testified at the preliminary hearing, consistent with her testimony at the first suppression hearing.

(§§ 667, subds. (b)-(i), 1170.12, 668).  After denying Renteria's motion for a new trial and declining to strike Renteria's prior strike, the trial court sentenced Renteria to a six-year prison term.

## II.
## DISCUSSION

Renteria's sole contention on appeal is that the trial court improperly denied his motions to suppress.

A.    *Applicable Legal Standards*

The Fourth Amendment protects individuals against unreasonable searches and seizures by law enforcement and other government officials. (U.S. Const., 4th Amend.)  "A defendant may move to suppress evidence on the ground that '[t]he search or seizure without a warrant was unreasonable.' (§ 1538.5, subd. (a)(1)(A).)  A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. . . .  'The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

"Inventory searches are a well-defined exception to the Fourth Amendment's warrant requirement.  (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.)  When a vehicle is impounded or otherwise in lawful police custody, an officer may conduct a warrantless search aimed at securing or protecting the vehicle and its contents.  ([*South Dakota v. Opperman* (1976) 428 U.S. 364, 373 (*Opperman*)].)  'The policies behind the warrant requirement are not implicated in an inventory search [citation], nor is the

related concept of probable cause.' (*Colorado v. Bertine*, at p. 371)." (*People v. Lee* (2019) 40 Cal.App.5th 853, 867 (*Lee*).)

"To determine whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than the purpose of the inventory.' [Citation.] 'The decision to impound the vehicle must be justified by a community caretaking function "other than suspicion of evidence of criminal activity" [citation] because inventory searches are "conducted in the absence of probable cause" [citation].' For example, impounding serves a community caretaking function when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism." (*Lee*, *supra*, 40 Cal.App.5th at p. 867.) In addition, as it is unlawful to operate a vehicle with an expired registration (Veh. Code § 4000, subd. (a)(1)), Vehicle Code section 22651, subdivision (o)(1)(A), authorizes police officers to impound a car found on a public street, public land, or offstreet parking facility when the vehicle registration is more than six months out of date. A vehicle may also be impounded if it displays a "license plate . . . that was not issued for that vehicle." (*Id.*, subd. (o)(1)(B).)

The existence of statutory authority for a law enforcement officer to impound a vehicle does not conclusively resolve the question of whether, in a specific instance, a vehicle was impounded for the improper purpose of facilitating an investigatory search that would not otherwise be constitutionally permitted. (*People v. Torres* (2010) 188 Cal.App.4th 775, 790 (*Torres*) [" 'statutory authorization [to impound a vehicle] does not, in and of itself, determine the constitutional reasonableness' of an inventory search"]; *Lee*, *supra*, 40 Cal.App.5th at p. 869 [the officer's "statutory authority to impound [defendant's] car after apprehending him for driving on a suspended license . . . does not automatically render any impound and

10

subsequent inventory search constitutionally proper"].)  "[I]nventory search cases apply 'the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.' " (*Torres*, at p. 788.)

Because of the focus on whether an impound of a vehicle was a ruse to search for evidence of criminal activity, "inventory searches are exceptions to . . . the usual rule that the police officers' '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' . . .  Instead, courts will explore police officers' subjective motivations for impounding vehicles in inventory search cases, even when some objectively reasonable basis exists for the impounding." (*Torres, supra,* 188 Cal.App.4th at pp. 787-788.)  Under this approach, "the inventory search exception evaluates both the *objective* reasonableness of the impound decision and the *subjective* intent of the impounding officer to determine whether the decision to impound was 'motivated by an improper investigatory purpose.' [Citation.]  Such purpose renders a decision to impound and the subsequent inventory search unlawful under the Fourth Amendment." (*Lee, supra,* 40 Cal.App.5th at p. 867, italics added.)

In determining whether an inventory search meets the constitutional requirement of reasonableness, a court may also focus on whether *the search itself* (rather than the decision to impound) was guided by standardized criteria.  "Because of the risk that an inventory search will be 'a ruse for a general rummaging,' . . . a valid inventory search must adhere to a preexisting policy or practice." (*People v. Williams* (1999) 20 Cal.4th 119, 138 (*Williams*).)  Thus, for instance, "standardized criteria . . . or established routine, . . . must regulate the opening of containers found during inventory searches," and the "individual police officer must not be allowed so much

11

latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " (*Florida v. Wells* (1990) 495 U.S. 1, 4 (*Wells*).)  When a police department has "no policy whatever with respect to the opening of closed containers encountered during an inventory search," the search is "not sufficiently regulated to satisfy the Fourth Amendment." (*Id*. at pp. 4-5.)

B.  *Substantial Evidence Supports the Implied Finding That the Officers' Decision to Impound Renteria's Vehicle Was Not a Ruse to Conduct a Search for an Improper Investigatory Purpose*

Renteria contends that the decision to impound and search the Toyota was unreasonable under the Fourth Amendment because it was a ruse for an improper investigatory search.  Renteria's argument has two parts, which we will discuss in turn.

First, Renteria contends that the circumstances under which his vehicle was impounded suggests that the impound was a pretext for an investigatory search because there was no "community caretaking function" associated with the decision to impound the Toyota.  Renteria relies on the principle that "[t]he absence of a proper community caretaking function suggests an impound is a pretext to investigate without probable cause, a purpose which is inconsistent with an inventory search." (*Lee, supra*, 40 Cal.App.5th at p. 867.)  Based on case law stating that "impounding serves a community caretaking function when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism" (*ibid.*), Renteria contends that the impound of the Toyota "was not proper because it served no valid community caretaking function."  As Renteria argues, "The officers conceded that the Toyota was legally parked in a residential neighborhood and was not blocking any traffic or any driveway.  It created no hazard to other drivers.  The vehicle was locked and there was no evidence to suggest

12

that it would be a target for vandalism or theft. In addition, the vehicle had only been parked in that location since the night before, so when the police arrived at 9:00 a.m. the next morning, it was not subject to impound as an abandoned vehicle. . . . Accordingly, . . . there was no community caretaking function which justified the impounding of the vehicle or the subsequent 'inventory' search."

Renteria's argument fails because it depends on an improperly narrow definition of "community caretaking functions." As we will explain, case law establishes that the term encompasses law enforcement action in response to an expired vehicle registration, as was the case here with the registration for Renteria's Toyota.

The term "community caretaking function" was defined by the Supreme Court in *Cady v. Dombrowski* (1973) 413 U.S. 433, 441, in a context which makes clear that it encompasses law enforcement action to address noncompliance with vehicle registration requirements. "All States require *vehicles to be registered* and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways. [¶] Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be

13

described as *community caretaking functions*, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." (*Ibid.*, italics added; see also *Opperman, supra,* 428 U.S. at p. 368 [citing *Cady v. Dombrowski* as providing the definition for "community caretaking functions"].) Further, consistent with the Supreme Court's definition of "community caretaking functions," California case law has recognized that impounding a vehicle for an expired registration falls within the category of law enforcement actions that will support a valid inventory search. (*People v. Suff* (2014) 58 Cal.4th 1013, 1056 ["[u]pon determining that the registration of defendant's van had expired more than a year earlier, the officer was authorized to impound the van" and then conduct an inventory search]; *People v. Green* (1996) 46 Cal.App.4th 367, 373 [officers conducted a valid inventory search of a vehicle that "could not be driven with an expired registration."]; *Halajian v. D & B Towing* (2012) 209 Cal.App.4th 1, 16 [the community caretaking exception was furthered by the impoundment of an unregistered vehicle because it prevented the vehicle from being operated on public highways and streets while it remained unregistered].)

Second, Renteria argues that even if the Toyota was impounded based on a community caretaking function due to its expired registration, that reason was merely a pretext. According to Renteria, the evidence shows that when the officers decided to impound the Toyota, they acted with the subjective intention of conducting an investigatory search to discover evidence of a crime. Renteria supports his argument with case law establishing, even when a vehicle impound is authorized by statute, a court assessing the reasonableness of an inventory search must examine "the subjective intent of the impounding officer[s] to determine whether the

14

decision to impound was 'motivated by an improper investigatory purpose.' "
(*Lee, supra,* 40 Cal.App.5th at p. 867.)

In arguing that the officers acted with the subjective intention of conducting an investigatory search, Renteria points to certain statements made by Officer Calvert that were recorded by her body worn camera. Specifically, Renteria points to the fact that (1) upon obtaining Renteria's driver's license, Officer Calvert asked Renteria if he had ever been arrested before; (2) while Officer Yeatman was conducting the inventory search and Officer Calvert was in the process of conducting a records check, Officer Calvert asked Renteria if he was on probation or discharged from probation; (3) while speaking on the phone with the sergeant, Officer Calvert misspoke and stated the officers would be conducting "a search incident to arrest on the vehicle" before correcting herself to say "inventory search"; (4) during the same conversation with the sergeant, Officer Calvert said that after conducting the search "we will see if there's any other violations to put him in," referring to Renteria; (5) while instructing Officer Yeatman to conduct an "inventory search," Officer Calvert told him to "[s]ee if there is anything in the . . . back or whatever"; and (6) Officer Calvert told the tow truck driver to leave because "we've got a lot of stuff to do with the car now," before learning that Renteria was a convicted felon.

In evaluating Renteria's argument, we are guided by the applicable standard of review. In denying Renteria's two suppression motions, the trial court necessarily made implied findings that the officers did not decide to impound the vehicle for a pretextual purpose, with the subjective intention to conduct an investigatory search. We review those implied findings to determine if they are supported by substantial evidence. In conducting a substantial evidence review of a trial court's ruling denying a suppression

15

motion, "[w]e must accept factual inferences in favor of the trial court's ruling" and "[i]f there is conflicting testimony, we must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them." (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

Here, substantial evidence supports a finding that the officers impounded the Toyota because of its expired registration, not because they intended to find evidence of Renteria's criminal activity. Officer Calvert testified that she decided to impound the Toyota because of San Diego Police Department policy requiring the impounding of any vehicle with a registration expired for over six months. Further, because the officers did not even know that Renteria was present when they decided to impound the vehicle, the sequence of events shown on the body worn camera videos support an inference that the decision to impound the vehicle had nothing to do with trying to find evidence that Renteria had committed a crime. As the body worn camera videos show, the tow truck driver was already on the scene, had hooked up the Toyota to the tow truck, and had opened the Toyota's doors so the officers could conduct an inventory search *before* Renteria unexpectedly emerged from the back of the camper shell. That sequence of events strongly suggests that the officers decided to impound the Toyota because of its expired registration, not because they were looking for evidence to implicate Renteria in criminal activity.

Even were we to conclude that the statements captured by Officer's Calvert's body worn camera *could have* supported a finding that the officers impounded the Toyota as a pretext for conducting an investigatory search, that is not the inquiry in our review for substantial evidence. Because

16

substantial evidence supports a finding that the officers impounded the vehicle because of its expired registration, not because they were trying to find evidence that Renteria had committed a crime, we reject Renteria's contention that the inventory search was an invalid investigatory search.[5]

C. *By Not Raising the Issue Below Renteria Has Forfeited His Contention That the Inventory Search Violated the Fourth Amendment Because There Was No Evidence the Officers Followed Standardized Criteria in Opening Containers During the Search*

Next, Renteria argues that even if we conclude that the officers did not impound the Toyota for a pretextual reason, the officers' search of the Toyota was nevertheless unreasonable under the Fourth Amendment because there

---

[5] We note that Renteria does not specifically challenge the People's position below or the trial court's ruling in the first suppression motion that once the officers learned Renteria was a convicted felon with firearms and ammunition in his vehicle, *the subsequent search* of the Toyota and camper shell was justified as a search incident to Renteria's arrest for the firearm offenses, or under the "automobile exception" based on probable cause that a firearm corresponding to the .357 caliber ammunition would be found. (See *Arizona v. Gant* (2009) 556 U.S. 332, 343 [permitting search of a vehicle incident to arrest "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle' "]; *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1230 [under the automobile exception, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."].) Although Renteria's opening appellate brief contains a section arguing that "[t]he automobile exception does not apply because there was no probable cause to search the vehicle" (emphasis omitted), that argument is directed at whether probable cause existed *at the beginning of the interaction* between Renteria and the officers, not whether probable cause developed *after* the officers discovered that Renteria was a convicted felon and found firearms and ammunition in the Toyota during the inventory search. As we understand Renteria's position, his argument for reversal depends solely on establishing that the inventory search that led to the subsequent search incident to arrest or based on probable cause was unreasonable under the Fourth Amendment.

17

was no evidence the officers followed standardized criteria in opening containers during the search.

As we have explained, "standardized criteria . . . or established routine, . . . must regulate the opening of containers found during inventory searches," and the "individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " (*Wells*, *supra*, 495 U.S. at p. 4.)  Thus, although the Supreme Court has stated that a police department may set a policy allowing police officers to open containers during an inventory search (*ibid*.),[6] when a police department has "*no policy whatever* with respect to the opening of closed containers encountered during an inventory search," the search is "not sufficiently regulated to satisfy the Fourth Amendment." (*Wells*, at pp. 4-5, italics added.)  Relying on this principle, Renteria argues that "no evidence was presented as to any policy on the opening of closed containers, nor was there any evidence that the police were following some 'standardized criteria' or 'established routine' when they elected to open the containers.  Accordingly, the search . . . exceeded the scope of a valid inventory search." (Emphasis omitted.)

In *Williams*, *supra*, 20 Cal.4th 119, our Supreme Court explained that to challenge the constitutionality of an inventory search by arguing that it was not performed according to standardized criteria, a defendant has the burden to adequately raise the issue during the litigation of a motion to suppress, and a failure to do so forfeits the argument on appeal.  "[W]hen defendants move to suppress evidence, they must set forth the factual and

---

[6]     "[P]olicies of opening all containers or of opening no containers are unquestionably permissible," as is a policy "to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors." (*Wells*, *supra*, 495 U.S. at p. 4.)

legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. [Citation.] Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal. '[T]he scope of issues upon review must be limited to those raised during argument. . . . This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' " (*Williams*, at p. 136.) "Defendants need only be specific enough to give the prosecution and the court reasonable notice. Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id*. at p. 131.) "The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id*. at p. 135.)

In *Williams*, the defendant's contention on appeal was that "the police were not following a preexisting policy and therefore violated his right to be free from 'unreasonable searches and seizures' when they opened the leather bags containing the methamphetamine" during an inventory search of his vehicle. (*Williams, supra*, 20 Cal.4th at pp. 124-125.) "[The defendant] asserted that, though the police may have had a policy requiring them to take an inventory of the contents of a vehicle before towing it, they had no policy governing the *opening of closed containers* during the course of this inventory." (*Id*. at p. 125.) By examining the defendant's briefing of the motion to suppress in the trial court, *Williams* evaluated whether the

19

defendant had sufficiently raised the issue below. "Defendant's trial court brief in support of his motion to suppress asserted that the search was improper because the police had no policy governing the taking of an inventory. The brief also cited and quoted the portion of *Wells* that requires a specific policy or practice governing the opening of closed containers." (*Williams*, at p. 127.) *Williams* concluded that by including these two items in his briefing of the motion to suppress, the defendant had sufficiently raised the issue of whether standardized criteria guided the inventory search. (*Id.* at pp. 127, 138.) "[B]y raising the question whether the inventory search was pursuant to a preexisting policy and by quoting from *Wells,* defendant adequately put the prosecution on notice as to the specifics of the policy it needed to prove." (*Id.* at p. 138.)

Based on the standard set forth in *Williams*, the People contend that Renteria did not adequately put them on notice that they needed to prove that the San Diego Police Department has a standardized policy regarding the opening of closed containers during an inventory search. According to the People, Renteria has therefore forfeited his ability to raise the issue on appeal. As we will explain, we agree.

As we have noted, Renteria brought two different motions to suppress. Renteria does not argue on appeal that his second motion, filed while he was representing himself, raised the issue of whether the officers conducted the inventory search pursuant to standardized criteria. We have reviewed the materials filed in connection with that motion and the transcript of the motion hearing, and we see no indication that Renteria raised the issue.

However, Renteria contends that he *did* raise the issue in his first suppression motion, which was filed by defense counsel. Renteria points to

two parts of his motion to suppress.  First, in setting forth the applicable legal principles, the motion to suppress described the holding of *Wells*.

> "In *Wells,* a car was impounded and there was an inventory search.  (*Wells,* (1990) 495 U.S. at 2.)  During this search, officers found a suitcase with a large amount of marijuana inside it.  (*Id.*) *The Court reversed the marijuana conviction because the officers conducting the inventory had no policy regarding closed containers* and had exceeded the scope of an inventory search.  (*Id.* at 5.)  Therefore, the search of the suitcase was unconstitutional.  (*Id.*)"  (Italics added.)

Second, in arguing that the inventory search was unreasonable, the motion to suppress stated,

> "Assuming arguendo, the search was initially made for a legitimate purpose, the incriminating evidence found was clearly not in plain view.  Even if the officers were legally able to search, for inventory purposes, the bags within the truck with camper shell are protected.  Like the purse in *Welch,* Mr. Renteria's bags were a container within the 'host' being searched.  The guns were found in concealed bags and the officers had to dig through items and look inside many personal and zipped compartments to find the guns.  The officers even had to pull out a bed, many clothes, and open zipped items from the truck with camper shell just to get to some of the incriminating evidence.  Further, where in *Welch* the officers had valid consent to search the car, here Mr. Renteria never consented to any search.

> "During the search, the officers found bags and notebooks, all of which they searched thoroughly.  The black bag found in the truck with camper shell was a closed container, similar to the suitcase found in *Wells.*  The officers had to look within a case, in the zipped opaque bag, to get to some of the incriminating evidence.  Looking into this bag was not part of the inventory search to protect Mr. Renteria's property.  This extended search was meant to investigate for anything incriminating.  Further, inventory searches are brief and do not require officers to read personal journals and search through closed containers.  Even if the officers could do an in-depth inventory search, here they exceeded the extent of their search when they looked well beyond

21

what they needed to in order to ensure that Mr. Renteria's belongings were accounted for."[7]

We conclude that the discussion in Renteria's motion to suppress does not provide the type of notice to the prosecution required by *Williams*. As Renteria correctly observes, as in *Williams*, his motion to suppress *did* cite the relevant passage from *Wells* that disapproves inventory searches that are not conducted pursuant to standardized criteria. However, in *Williams*, the defendant's motion to suppress contained a *second* crucial statement that is not present here. In *Williams*, the defendant also argued that " 'the Tuolumne County Sheriff's Office has no written policy or procedure for inventory searches.' " (*Williams, supra*, 20 Cal.4th at p. 137.) That statement, in particular, when combined with the citation to *Wells*, put the prosecution on notice that it was required to present evidence that the Tuolumne County Sheriff's Office had standardized criteria governing inventory searches. (*Ibid*.) In contrast, Renteria's motion to suppress contained no suggestion that the San Diego Police Department lacks a standardized policy for inventory searches.

Renteria therefore did not "adequately put the prosecution on notice as to the specifics of the policy it needed to prove" regarding its standardized inventory search criteria. (*Williams, supra*, 20 Cal.4th at p. 138.) Renteria accordingly may not argue for the first time on appeal that the officers' inventory search of the Toyota was invalid under the Fourth Amendment on

---

7    The discussion of "*Welch*" in Renteria's motion to suppress refers to *U.S. v. Welch* (9th Cir. 1993) 4 F.3d 761. The issue in *Welch* was whether a party detained in a casino had the authority to give consent to a law enforcement search of his companion's purse, which was located in the trunk of a rental car in which they were both travelling. (*Id*. at pp. 763-765.) The case had nothing to do with whether an inventory search was conducted pursuant to standardized criteria.

the ground that the record lacks any evidence of a San Diego Police Department policy regarding whether officers conducting inventory searches may open containers.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:



O'ROURKE, Acting P. J.



AARON, J.